517 P.2d 83

**STATE of Arizona, Appellee,**

v.

**Brenda Ann SMITH, Appellant.**

**No. 2555.**

Supreme Court of Arizona,
In Division.

Dec. 21, 1973.

Rehearing Denied Jan. 22, 1974.

Gary K. Nelson, Atty. Gen., by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Stewart & Florence by Henry J. Florence and Charles Ledsky, Phoenix, for appellant.

HAYS, Chief Justice.

Defendant, Brenda Smith, a 21-year-old resident of Orlando, Florida, appeals from a conviction of the crime of transporting marijuana, for which she received a suspended sentence and three years probation. The case was tried by the court sitting without a jury.

The facts, taken in a light most favorable to the State, follow. Defendant had been working for some time at a ranch in Tucson but decided to return to her home in Florida. She purchased a through ticket which would take her from Tucson to Phoenix on American Airlines Flight # 69; from Phoenix to Dallas, on Delta Airlines; and then to Florida. Arriving at the airport in Tucson, she was carrying two blue suitcases—one small and one large—which she gave to an attendant at the curb. She then went to the ticket counter where she checked them and received duplicate baggage checks which were stapled to her airline ticket. After that she enplaned for Phoenix.

Shortly thereafter, Sergeant Doty of the Tucson police received a phone call from a man who stated that Miss Smith was carrying narcotics in her luggage en route to Phoenix on American Airlines Flight # 69, and that she was carrying two blue bags. He also gave to Doty the claim check number on the large bag. Sergeant Doty testified that although he knew the caller's name, he did not know the man personally, but that the caller identified himself by name, and stated that he was an airline employee; that the informant was reliable because on two previous occasions his information had led to arrests for possession of narcotics; and that he recognized the caller's voice from previous conversations. Doty then called Officer Quinonez of the Phoenix police, relayed the information, and told him why it was reliable.

The informant told Doty that he had seen the marijuana in the blue suitcase.

On cross-examination at the trial, Doty admitted that he did not know how the informant was able to look inside the suitcase and did not ask him. He also testified that he had no reason to believe that the informer was paid by the police or any other governmental agency.

Quinonez called back to Tucson to make sure that his call had actually come from Doty. It had. He then phoned Sergeant Kinsey of the Phoenix police, who was stationed at the airport, passed on to him the

information he had just received from Tucson by phone, and asked that Kinsey investigate whether Brenda Smith was in fact an arriving passenger on American Airlines Flight # 69. Kinsey called back and advised Quinonez that Flight # 69 had already unloaded; that Miss Smith and her luggage were already aboard the Delta plane which was about to take off for Dallas. Kinsey asked whether there was probable cause for a search and arrest and Quinonez said that there was and ordered Kinsey to proceed with the search. Quinonez then took off for the airport.

At the airport security office he found Kinsey, another officer and Miss Smith, in the presence of the large blue suitcase which was open and which was filled with bricks of marijuana. In the bag, in addition to the marijuana, were a pillow and a quantity of mothballs. Quinonez took Miss Smith's purse and found the ticket with the claim checks stapled to it, one of which matched its other half which was attached to the suitcase.

Officer Kinsey testified that Quinonez had told him on the phone that he had reliable information from the Tucson police that Miss Smith, arriving on Flight # 69, was bringing a blue suitcase filled with marijuana, and that the claim number on the bag was 45–41–91; that he removed Miss Smith's luggage from the Dallas-bound Delta plane; that he opened the larger bag; that he found marijuana in it; and that he then arrested her. Kinsey testified that he then had Miss Smith accompany him to the security office, where she was advised of her rights. She was not questioned until Quinonez arrived a few minutes later. There is no question that Officer Kinsey, who arrested defendant and who conducted the initial search, was not told and did not know how the Tucson informant received his information, and relied on Quinonez's telephone statement that there was probable cause for a search.

■ An objection by defendant to the admission into evidence of the suitcase full of marijuana was overruled and defendant took the stand on her own behalf. Her defense was that the suitcase was not hers because her suitcase had no marijuana in it. The evidence that it was her suitcase was sufficient to support the trial court's finding of guilt. Even the contention that her purse contained no key to the suitcase was offset by the fact that she admitted the bag had not been locked.

The chief issue raised on appeal is whether defendant was the victim of an unreasonable search, such as is prohibited by both our state and federal constitutions. Defendant argues that under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1968), there was not probable cause for the search. It is true that these cases require the informant to be reliable and a showing be made that he knows whereof he speaks. In the instant case, there was a showing that the informant saw the marijuana in the suitcase. The evidence showed an exigent situation. Were it not for a disturbance that delayed the plane's departure, it would have left on time and the seizure would have been frustrated. This case is analogous to Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In that case, an informer in Denver informed federal agents that the accused was peddling narcotics; that he had gone to, and would return from, Chicago by train on the morning of either September 8 or 9 with heroin in his possession; that the accused was a 27-year-old Negro, 5 feet, 8 inches tall, weighing about 160 pounds, and would be wearing a raincoat, brown slacks and black shoes; and that he would be carrying a tan zippered bag and habitually walked fast. Federal agents saw a man answering that description, arrested him, and upon searching his person, found the heroin. Obviously, in that case, the agents did not know how the informant knew that the man would be carrying heroin. As a matter of fact, the agents must have known that the informant *couldn't* have known that fact, because at the time the informa-

tion was given to the agents, the accused had not yet gotten on the train in Chicago, and the informant was in Denver. The United States Supreme Court held that the agents, upon seeing a man answering to the description they had received, step off the train, dressed as expected, carrying a zippered bag, and walking rather fast, "had personally verified every facet of their information . . `. except . . ." the presence of heroin. The Court continued:

"With every other bit of . . . information being thus personally verified, Marsh had 'reasonable grounds' to believe that the remaining unverified bit of Hereford's information . . . the heroin . . . was likewise true." 79 S.Ct. at 333.

We have the same situation here, where the police officer found that a young woman named Brenda Smith had arrived on American Airlines Flight #69 and had transferred to a Delta plane bound for Dallas, with two blue suitcases, carrying the correct claim numbers. In the words of the Supreme Court, Officer Kinsey had reasonable grounds to expect that the contents of the suitcase would likewise conform to the advance information. Defendant attempts to distinguish *Draper, supra,* by arguing that the informant in the instant case didn't have as many facts as in *Draper*—such as Miss Smith's description. We fail to see any distinction.

There is a slight conflict in the testimony as to the number printed on the baggage claim check, and it is possible that Quinonez gave Kinsey the number 4–41–91, omitting the second digit. However, Kinsey's testimony was that Quinonez told him that the number to look for was 45–41–91, and that was the number on the tag and the stub, as read into evidence at the trial.

It is also argued that it is necessary that Kinsey, the officer who made the search and the arrest, have all the facts needed to constitute probable cause, including knowledge that the informant had actually seen the marijuana in the suitcase. In this case, the informant had that knowledge; Doty had it; and Quinonez had it. The latter did not give Kinsey that specific item of information. For this reason, defendant argues that Kinsey, who made the search, did not have probable cause to make it.

In our opinion, that objection is hypertechnical and meaningless. If there was probable cause for the search in one officer, and he orders another officer to make the search, the second officer is merely obeying an order of another officer who had probable cause. Quinonez had probable cause. Quinonez had probable cause but was too far from the airport to get there and make the search himself before the plane took off. As the Court said in United States v. Romero, 249 F.2d 371 (2 Cir. 1957):

"Where the agents were working together and in cooperation were observing the activities of the various participants and informing each other of the progress of the conspiracy, the knowledge of each was the knowledge of all." 249 F.2d at 374.

For other recent Arizona cases involving searches of containers being transported by air, *see* State v. Fassler, 108 Ariz. 586, 503 P.2d 807, and State v. Fellows, 109 Ariz. 454, 511 P.2d 636 (1973).

Defendant also argues that the circumstances of the case against her required the State to reveal the name of the informant. Defendant's position is that the informant must be the counterman at American Airlines in Tucson, must be making it a practice to search passengers' oncoming luggage, and therefore in all probability is an employee of the police or some other government agency. This is not the usual case of an informer making a buy or in some other way being involved as a material witness to the crime. Defendant has failed to bring his situation under the rule requiring revelation of the informer. The elements of a valid motion to require the State to reveal the informer's name are fully set forth in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1

L.Ed.2d 639 (1957). The burden of proving these elements is on defendant.

■ The information was carelessly drawn to cover transportation *into* the State, whereas the statute makes it a crime merely to transport marijuana, and defendant's transportation was not from out of state. The charge, however, was sufficient and there is no complaint that defendant was surprised or misled.

Lastly, defendant argues that the State failed to prove knowledge, dominion or control over the suitcase, arguing that the informant may have planted the marijuana or switched the claim tags to another bag. These are matters of proof which are resolved by the verdict against defendant.

For the reasons stated above, the judgment is affirmed.

CAMERON, V. C. J., and HOLOHAN, J., concur.