701 P.2d 858

The STATE of Arizona, Appellee,

v.

Rodolfo CHAVEZ–INZUNZA and
Roberto Chavez-Inzunza,
Appellants.

Nos. 2 CA–CR 3070, 2 CA–CR 3087.

Court of Appeals of Arizona,
Division 2,
Department A.

April 3, 1985.

Review Denied June 7, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Diane Hienton, Phoenix, for appellee.

William Rothstein, Nogales, for appellants.

OPINION

BIRDSALL, Presiding Judge.

The appellants, Rodolfo and Roberto Chavez-Inzunza, are brothers and were co-defendants in the superior court. Roberto was tried and sentenced in absentia. He was found to be guilty of unlawful possession of marijuana for sale, transportation of marijuana, and conspiracy, all as

charged. The appellant Rodolfo was convicted of possession for sale and unlawful transportation.

The issues on appeal concern:

1. The denial of a motion to suppress the marijuana and statements of the appellants;

2. The decision to proceed with the trial and sentencing without Roberto; and

3. The denial of a motion for mistrial as to Roberto.

We reverse as to Roberto, but affirm as to Rodolfo.

We first review the facts in a light favorable to the trial court's ruling on the suppression motion and the guilty verdicts. On October 21, 1982, supervisory customs officer Arthur Budzeyko was on duty at the port of entry between the United States and Mexico in Santa Cruz County, Arizona, when he observed a 1977 Ford being inspected there. Budzeyko approached the vehicle and looked in the trunk area. He noticed a strong odor of marijuana coming from the trunk area and observed some marijuana debris on both sides of the wheel wells. He saw that the interior of the trunk area as well as the outside of the vehicle had been thoroughly cleaned.

The driver of the Ford, Efraim Chavez, was followed as he drove to Short Street in Nogales, Arizona, and entered a residence which was approximately 50 yards from the international border. The driver reentered the vehicle and from Short Street it was followed to Morley Street and then to a shopping center parking lot.

The driver parked the vehicle and walked up a wash 100 yards to the Preston Trailer Park. He walked up to a trailer at space H, peered into the windows, then took the same circuitous route back to his vehicle.

He then drove the Ford back to the Short Street location. Both Short Street at that location and the Preston Mobile Home Park are known areas of marijuana dealing. Major seizures of contraband have taken place at or near these locations.

Later, the same driver again left Short Street, drove the Ford down Morley Street, and parked in a private parking lot directly across from the International Bar in Nogales. There he left the vehicle and entered a department store. He never returned to the Ford.

A female was next observed entering the Ford. She drove it to the Americana Hotel parking lot and parked it. Budzeyko testified that the switching of individuals concerned with the car and their actions led him to believe that they were "running heat," or looking for surveillance.

The female never returned to the Ford. Instead, officers followed her and she eventually walked to the Short Street address that the original driver had visited twice previously that day.

At that point, Budzeyko and his group began constant surveillance of the Ford. Surveillance was maintained until 2 a.m. the next morning and resumed at 6:15 a.m. Budzeyko checked the vehicle and noticed that it was equipped with heavy duty suspension, also typical of vehicles used in marijuana hauling.

About 7:15 that morning, October 22, appellant Roberto Chavez-Inzunza entered the Ford and left the hotel parking lot at a high speed. Budzeyko followed Roberto to the Preston Trailer Park. Roberto parked the Ford, and entered the trailer at space H, the same trailer that the previous day's driver had peered into.

A short time later, three individuals, Roberto, Rodolfo, and Juan Mario Chavez, left the trailer and were observed by Budzeyko. Roberto and Rodolfo carried a tire out of the trailer; Mario carried a jack extension.

Roberto, Rodolfo, and Mario approached a 1978 Chevy parked in front of the trailer. Mario opened the rear door and Roberto and Rodolfo placed the tire on the back seat of the Chevy. In Budzeyko's experience, it was common for load cars involved with marijuana offenses to carry the spare tire and the jack in the back seat, rather than inside the loaded trunk.

Budzeyko observed Roberto and Rodolfo enter the Ford, while Mario drove the 1978 Chevy. Appellants left the area in the

Ford at high speed directly past Budzeyko; Roberto was driving. Budzeyko followed the Chevy driven by Mario to see how it passed over a cattle guard on Interstate 19 and to observe how it handled on the road. It appeared to be heavily weighted down in the rear.

Based on his experience, Budzeyko believed that the Ford was being used as a "heat car," a car that drives ahead of a load vehicle to detect law enforcement officers. The suspicion was enhanced by the fact that the Ford was equipped with a CB radio. In Budzeyko's experience, it was common for the "heat car" and the load car to communicate with each other regarding any law enforcement officers on the route. Budzeyko's suspicion was further confirmed when the Ford, driven by appellant Roberto, waited at the intersection of I–19 and Highway 89 until the Chevy entered the highway, then sped up and maintained a distance ahead of the Chevy. He radioed the other officers in his group and advised Officer Callahan to stop the Ford, while he stopped the Chevy. He initiated his red lights and siren. At that point, the Chevy left the Interstate at the Rio Rico exit, went through the stop sign at the end of the ramp, started over the overpass, and began picking up speed. Budzeyko believed that the driver of the Chevy was headed back toward the border because he was loaded with marijuana and had been discovered.

Budzeyko and another law enforcement vehicle finally stopped the Chevy. He approached the vehicle and told the individual in Spanish to exit the vehicle. The driver opened the door and stepped out. Budzeyko detected *a strong marijuana smell* from the inside of the vehicle. The driver, Mario Chavez, was placed under arrest. Budzeyko took the keys from the ignition to open the trunk and observed a large quantity of marijuana there.

Simultaneously, Officer Callahan and Officer Criss, acting on the radioed orders of Budzeyko, stopped the Ford containing appellants Roberto and Rodolfo. The appellants were advised of their *Miranda* rights

in both Spanish and English and were transported to Department of Public Safety headquarters. There each gave statements which were subsequently introduced into evidence at trial. Both admitted their participation in the offenses.

Prior to trial, appellants were released on bond, one condition being that they were not to travel any further into Mexico than Nogales, Sonora. At time for trial, counsel for appellants notified the judge that appellant Roberto was in a Mexican federal prison in Guadalajara, Jalisco. The judge determined through inquiry with Mexican authorities that Roberto had been arrested just outside of Guadalajara and therefore had clearly broken the condition of his release that he not enter any further south into Mexico than Nogales, Sonora.

The matter proceeded to trial with Roberto in absentia and Rodolfo present.

We turn first to the denial of the motion to suppress. It is apparent from the foregoing facts that the officers had at least reasonable suspicion to believe the appellants were involved in ongoing criminal activity and that an investigatory stop was in order. *State v. Graciano*, 134 Ariz. 35, 653 P.2d 683 (1982), and *State v. Million*, 120 Ariz. 10, 583 P.2d 897 (1978). The marijuana which appellants sought to have suppressed was found not in their car but in the Chevy. The observation of the Chevy's appearance and actions gave probable cause to stop it, the evasive action of its driver gave probable cause to arrest him, and the mobile character of the vehicle as well as the odor of marijuana supplied exigent circumstances justifying a search. The surveillance of the Ford and of the appellants acting in concert with the Chevy's driver then gave probable cause to arrest the appellants. Because officers are entitled to rely upon their collective knowledge as relayed by radio here, there was probable cause to arrest Rodolfo and Roberto. *State v. Sardo*, 112 Ariz. 509, 543 P.2d 1138 (1975); *State v. Olson*, 134 Ariz. 114, 654 P.2d 48 (App.1982). See also *State v. Smith*, 110 Ariz. 221, 517 P.2d 83 (1973).

The other issues concern only the appellant Roberto, and we need only consider the issue concerning his trial in absentia. We hold that it was error to proceed with his trial while he was in custody in Guadalajara and his conviction must be reversed.

Rule 9.1, Rules of Criminal Procedure, 17 A.R.S., provides:

"Except as otherwise provided in these rules, a defendant may waive his right to be present at any proceeding by voluntarily absenting himself from it. The court may infer that an absence is voluntary if the defendant had personal notice of the time of the proceeding, his right to be present at it, and a warning that the proceeding would go forward in his absence should he fail to appear."

Otherwise under Criminal Rule 19.2, the defendant has a right to be present at every stage of the trial.

The trial judge reasoned that because Roberto had apparently *voluntarily* violated the conditions of his release he was also *voluntarily* absent from his trial. This is a nonsequitur. No authority cited supports such a proposition. To the contrary, other jurisdictions have held that defendants in custody under analogous circumstances are not voluntarily absent and their trial in absentia was reversible error.

In *State v. Okumura,* 58 Hawaii 425, 570 P.2d 848 (1977), the defendant, while on trial, attempted to escape from the courtroom and was injured. The trial court refused to grant a continuance of the trial while he was absent receiving medical treatment. The Hawaii Supreme Court held he had not waived his right, under either the U.S. or the state constitution, to be present, and his conduct was not a voluntary absence under Hawaii's criminal rule. In *United States v. Crutcher* 405 F.2d 239 (2d Cir.1968), cert. denied 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969), the defendant was not present for his trial in Connecticut because he was arrested in New Jersey two days before the trial commenced and was in custody. Upon learning this, the U.S. attorney attempted to secure his presence from New Jersey, but because he had given a false name upon that arrest, the attempt was unsuccessful. Because there may have been other facts indicative of waiver, the case was remanded. See also Annot. 21 A.L.R.Fed. 906 (1974).

Affirmed as to Rodolfo Chavez-Inzunza.

Reversed as to Roberto Chavez-Inzunza.

HOWARD and FERNANDEZ, JJ., concur.