924 P.2d 474

**STATE of Arizona, Appellee,**

v.

**Oscar Daniel SAINZ, Appellant.**

**No. 1 CA–CR 94–0681.**

Court of Appeals of Arizona, Division 1, Department E.

March 12, 1996.

Review Denied Sept. 24, 1996.

---

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and R. Wayne Ford, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

VOSS, Judge.

Oscar D. Sainz (defendant) appeals his conviction of second degree murder, a class 1 felony. Defendant was sentenced to a mitigated term of thirteen years incarceration. We affirm the conviction and sentence as modified.

## BACKGROUND

Between 1:00 and 2:00 a.m. on January 23, 1993, a group of gang members harassed defendant while he used a pay phone at a convenience store at Central Avenue and Baseline Road. Defendant then drove to a park where his friends, members of a different gang, congregated. Although defendant denied belonging to the gang, he often spent time with the members.

Defendant and his friends decided to "hunt down" the gang members who had harassed him. Defendant drove his girlfriend's pickup with Manuel Urbieta as a passenger while other cars filled with defendant's friends followed. Near Seventh Avenue and Broadway, defendant saw a Buick that he thought contained the rival gang members who harassed him. Defendant and his group began pursuing the Buick. The Buick stopped behind another car for a red light at Seventh Street and I–17. Defendant drove the pickup next to the Buick and slowed while Urbieta leaned out the passenger side window and fired several rounds at the Buick from a pistol.

Five people were riding in the Buick, including fifteen-year-old Alfred Sanchez. Immediately after the shooting, the driver, Danny Landas, pulled onto the freeway. After the passengers discovered that Sanchez had been shot, Landas drove to St. Luke's Hospital. Sanchez was dead on arrival.

A taxi-cab driver saw the pickup after hearing the vehicle's description on his police scanner. The driver alerted a patrol officer and police arrested defendant and Urbieta. Urbieta confessed and took police to the house where he and defendant disposed of the pistol. Defendant initially denied any involvement in the shooting but later made a statement admitting his involvement after learning of Urbieta's confession. Defendant claimed that he did not know Urbieta was going to shoot at the Buick.

Defendant was charged with first degree murder under an accomplice liability theory. Urbieta was killed in a drive-by shooting before the trial. Defendant was present for voir dire and the first two days of trial, although he twice arrived late for the proceedings and received warnings from the trial court regarding his tardiness. On the third day of trial, May 10, 1994, defendant was absent. Neither defendant's counsel nor the prosecutor knew of defendant's whereabouts so the trial court proceeded without him. As it turns out, defendant had been arrested in Mesa on a drug charge. Although defense counsel's secretary had received that information and forwarded it to the court administrator by 2:00 p.m., the trial court did not learn of defendant's arrest until 2:55 p.m. Between 1:30 p.m. and 2:55 p.m., five witnesses testified in defendant's absence. The trial court recessed after learning of defendant's arrest.

When defendant returned on May 11, 1994, the trial court discussed his absence. Defendant moved for a mistrial because he was unable to confront the witnesses who testified on May 10. The trial court denied the motion.

The jury found defendant guilty of the lesser included offense of second degree murder and the trial court sentenced defendant to a mitigated term of thirteen years incarceration. Defendant timely appealed.

## DISCUSSION

### A. Proceeding During Defendant's Absence From Trial

Defendant argues that the trial court violated his due process and confrontation rights when it proceeded to trial in his absence. *See generally* U.S. CONST. amend. VI and amend. XIV; ARIZ. CONST. art. II, §§ 4 and 24.

### 1. Arizona Rules of Criminal Procedure, Rule 9.1

Rule 9.1 permits the inference that a defendant is voluntarily absent from a proceeding (thus waiving his or her rights to confrontation and due process) if the defendant had personal notice of (1) the time of the proceeding, (2) the right to be present at it, and (3) a warning that the proceeding would go forward in his or her absence. The Ninth Circuit Court of Appeals found that Rule 9.1 "comports with the requirement of a waiver of the defendant's constitutional

rights provided that the defendant is afforded a hearing to determine whether his absence was, in fact, voluntary." *Brewer v. Raines,* 670 F.2d 117, 120 (9th Cir.1982); *see also State v. Tacon,* 107 Ariz. 353, 488 P.2d 973 (1971), *cert. granted,* 407 U.S. 909, 92 S.Ct. 2446, 32 L.Ed.2d 682 (1972), *cert. dismissed as improvidently granted,* 410 U.S. 351, 93 S.Ct. 998, 35 L.Ed.2d 346 (1973) (upholding rule that preceded current Rule 9.1).

 The clear import of *Brewer* is that when using Rule 9.1, the trial court must, if asked, determine whether the defendant's absence was, in fact, voluntary. If subsequently discovered facts show that a defendant's absence was not voluntary, then it is error to ignore the reality of the situation and adhere to the limited facts known to the trial court at the time of the defendant's absence. The Rule 9.1 inference is rebuttable.

 On two occasions, the trial court chastised defendant for his tardiness. The trial court told defendant what time he needed to be in court and warned him that the trial would proceed without him if he was tardy again. R.T. of May 5, 1994, at 7; R.T. of May 9, 1994, at 136. Therefore, the trial court was well within its bounds to proceed in defendant's absence when he was not present on May 10, 1994, and there was no information regarding his whereabouts.[1]

On May 11, 1994, defendant was present and all involved knew that he was absent the previous day because of his arrest in Mesa. The trial court began by stating:

And by [yesterday's] record the court has impliedly admitted a finding that the defendant's absence at 1:30 was voluntary under the circumstances known to the court at that time and to counsel at that time.

The court at this time makes a specific finding that the defendant's absence was voluntary at yesterday's session at 1:30 where we proceeded in his absence under the circumstances known to the court at that time.

R.T. of May 11, 1994, at 3–4. The trial court used exclusively the facts known to the court at the commencement of trial to determine whether defendant's absence was voluntary. The trial court did not consider the uncontroverted fact that defendant was unable to attend the commencement of trial because of his confinement in jail.

 We believe the correct course to follow in such situations is for the trial court to first determine on the record whether the defendant's absence was voluntary or involuntary based on all the facts presented to the court on the issue.[2] If the absence was voluntary, the court need not take any further action. If the absence was involuntary, the court then must determine if the defendant was prejudiced by the proceedings that occurred in his or her absence.[3] Just as appellate courts conduct harmless error review when proceedings are held erroneously in a defendant's absence, the trial court can look for prejudice.

 Here, the trial court erred by relying solely on the facts known on May 10, 1994, at 1:30 p.m. in determining that defendant's absence was voluntary. Had the trial court considered defendant's confinement, the only conclusion that could have been reached was

1. We agree with appellant that an absence because one is arrested is "involuntary." *See State v. Chavez–Inzunza,* 145 Ariz. 362, 365, 701 P.2d 858, 861 (App.1985). In that case, however, a defendant was improperly tried and sentenced *in absentia* because the trial court knew that the defendant was in a Mexican jail but commenced with trial anyway. *Id.* Here, the trial court did not know that appellant was in jail in Mesa when it proceeded with the day's testimony.

2. The defendant bears the burden of overcoming the inference and showing that the absence was involuntary. *State v. Suniga,* 145 Ariz. 389, 392, 701 P.2d 1197, 1200 (App.1985).

3. After concluding that appellant's absence was voluntary and then exonerating appellant's bond, the trial court entertained appellant's oral motion for mistrial. During argument, the trial court asked appellant's counsel if his cross-examinations would have been different if appellant had been present. Counsel said that he was "pretty sure" his cross-examination of one witness would have been different, but did not explain how. This is the only evidence in the record showing that the trial court examined the possible prejudice to appellant because of his absence.

that defendant's absence was involuntary. Therefore, we undertake our own analysis of whether defendant was prejudiced by the court proceedings in his absence.

### 2. Harmless Error Analysis

■■■ Criminal proceedings conducted in violation of a defendant's right to be present may be reviewed for harmless error. *E.g., Hegler v. Borg,* 50 F.3d 1472, 1476 (9th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 675, 133 L.Ed.2d 524 (U.S. Dec. 11, 1995). We will analyze defendant's absence for harmless error using these assumptions: (1) defendant was involuntarily absent on May 10, 1994, and (2) he did not waive his rights to be present and confront the witnesses who appeared that day.

In *United States v. Rogers,* 853 F.2d 249 (4th Cir.), *cert. denied,* 488 U.S. 946, 109 S.Ct. 375, 102 L.Ed.2d 364 (1988), the defendant was fifty minutes late for the second day of trial. The court asked defense counsel about the defendant's absence, but counsel offered no explanation. Without further inquiry, the court proceeded and took the testimony of three witnesses. When the defendant did appear, the court made transcripts of the testimony available and gave the defendant the opportunity to recall the witnesses. *Id.* at 251. The Fourth Circuit Court of Appeals held that the court erred by not making further inquiry into the defendant's absence.[4] The court of appeals held that the court improperly proceeded in the defendant's absence because there was insufficient evidence to establish a waiver of the defendant's rights.[5] It was, however, harmless error. *Id.* at 252. To reach that conclusion, the court of appeals looked at the overall strength of the government's case, the consistency throughout all of the testimony, the ability to recall the witnesses, and the availability of transcripts. *Id.*

In *United States v. Toliver,* 541 F.2d 958 (2d Cir.1976), the court committed harmless error when it allowed two witnesses to testify during the defendant's absence. Of interest to us is the first witness. He gave foundation testimony for the admission of certain photographs without identifying the defendant as the person in the photographs. There was no showing of how the defendant's presence would have assisted her counsel in cross-examining the witness. Although given the opportunity to do so, the defendant and her counsel decided not to recall that witness. *Id.* at 965.

Here, five police witnesses testified during defendant's absence. The substance of the testimony is summarized:

1. Officer Moreno laid the foundation for the recovery of the pistol. (Urbieta took the police to the house where he left the pistol but defendant did not accompany them.)

2. Officer Choitz accompanied Officer Moreno and Urbieta.

3. Detective Underwood discussed meeting witnesses at the hospital and their demeanor. He did not mention the contents of their statements. The detective described how the police identify gang members and admitted that he did not know defendant as a gang member.

4. Officer Norton discussed securing the scene of the crime and finding shell casings and automobile glass there. He was cross-examined on his contact with the taxi driver who alerted police to the suspect vehicle.

5. Officer Clark met witnesses at the hospital and took one to identify the suspects. He mentioned that the witness identified one of the suspects as the driver, but he did not specify whom the witness identified.

---

4. The *Rogers* court addressed that defendant's right to be present under Rule 43, Federal Rules of Criminal Procedure. Federal Rule 43 simply codifies the right to be present under the Fifth and Sixth Amendments. *United States v. Rhodes,* 32 F.3d 867, 872 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1130, 130 L.Ed.2d 1092 (1995).

5. There is no Federal counterpart to Arizona Rule 9.1. While an Arizona court may infer that a defendant's absence is voluntary in certain situations and proceed with trial, federal courts must make further inquiry. Even with Rule 9.1, if a defendant proves that his absence was involuntary, the defendant will not be deemed to have waived the due process and confrontation rights.

Like *Toliver*, we do not believe that defendant's presence would have aided in the cross-examination of these witnesses. The testimony regarded matters of which defendant had limited knowledge. Defendant chose not to recall any of the witnesses when he was present, leading one to conclude that defendant's presence would not have changed the cross-examinations. In fact, defendant's brief is devoid of any argument suggesting that his absence prejudiced his counsel's ability to cross-examine these witnesses.

As in *Rogers*, the state presented a strong case. Although the state could not convince the jury of defendant's premeditation, the state did show defendant's intent to harm the victim. Witnesses who rode in the Buick with the victim and a witness from another car testified that the pickup driven by defendant slowed considerably as it drove by the Buick and sped away after the shooting. While some witnesses had different opinions about the color of the stoplight when the pickup sped away, they consistently described the slowing and speeding away. The taxi driver stated that he saw defendant and Urbieta laughing and mimicking shooting a pistol after the incident. The detective to whom defendant made his statement testified that defendant stated that he and his friends wanted to "hunt down" the rival gang members.

Also like *Rogers*, the trial court twice informed defendant that he could recall any of the witnesses who testified in his absence. Although the trial court did not offer transcripts of that testimony, defendant did not request them. Defendant chose not to recall the witnesses and apparently did not believe it was necessary to review their testimony.

We find that defendant was not harmed when the trial court proceeded during his absence on May 10, 1994.

### B. *Defendant's Presentence Incarceration Credit*

The state does not contest defendant's argument that he is entitled to an additional two days of preincarceration credit. Accordingly, defendant shall receive 187 days, instead of 185 days, preincarceration credit.

## CONCLUSION

In addition to addressing the issues the raised by defendant, we have reviewed the entire record for fundamental error. Finding none, we affirm the conviction and sentence as modified.

GERBER, P.J., and THOMPSON, J., concur.