IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

ANALYSYA CONTRERAS,
*Appellant*.

No. 2 CA-CR 2023-0232
Filed September 23, 2024

---

Appeal from the Superior Court in Pinal County
No. S1100CR202100934
The Honorable Jason R. Holmberg, Judge

**AFFIRMED**

---

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Diane Leigh Hunt, Assistant Attorney General, Tucson
*Counsel for Appellee*

E.M. Hale Law, Lakeside
By Elizabeth M. Hale
*Counsel for Appellant*

---

**OPINION**

Presiding Judge Gard authored the opinion of the Court, in which Chief Judge Staring and Judge Eckerstrom concurred.

---

G A R D, Presiding Judge:

**¶1**         Analysya Contreras appeals her conviction and sentence for sale of a narcotic drug.  She argues the trial court erred when it tried her in absentia and forced her to assert an entrapment defense.  For the reasons that follow, we affirm.

### Factual and Procedural Background

**¶2**         We view the facts in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against Contreras. *See State v. Fierro*, 254 Ariz. 35, ¶ 2 (2022).  In April 2021, the Pinal County Narcotics Task Force received a tip that Contreras was selling fentanyl via Facebook.  An undercover detective contacted Contreras in an attempt to set up a drug purchase.  But because Contreras lived in Mesa and the task force generally operated only within Pinal County, the undercover detective told Contreras to contact him if she ever traveled to Casa Grande.  The two thereafter exchanged numerous communications over a six-week period but did not complete a transaction.

**¶3**         In May, Contreras notified the detective that she would be traveling to Casa Grande and offered to sell him ten "blues," a slang term for fentanyl pills.  Contreras arrived at the agreed-upon location, got out of a car, walked up to the undercover detective's vehicle, and handed him a plastic bag containing ten pills, in exchange for $100.  The pills were later confirmed to be fentanyl.  Immediately after the sale, Contreras was arrested and charged with one count of sale of a narcotic drug.  She spoke to police and admitted having traveled to Casa Grande to sell ten fentanyl pills.

**¶4**         Following a three-day trial that Contreras did not attend, a jury found her guilty.  Thereafter, the court issued a warrant for her arrest, and she was apprehended fifteen months later.  The court sentenced her to a thirteen-year prison term.  This appeal followed.

**Jurisdiction**

**¶5**         As a preliminary matter, the parties dispute whether Contreras's absence, which prevented sentencing from occurring within ninety days of conviction, resulted in a waiver of her right to appeal under A.R.S. § 13-4033(C), thereby divesting us of appellate jurisdiction. We conclude Contreras did not forfeit her right to appeal, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**¶6**         Article II, § 24 of the Arizona Constitution affords a defendant the right to appeal in all criminal cases. Its statutory counterpart, § 13-4033(A), specifies the types of orders that are appealable, including final judgments of conviction. However, the right to appeal may be deemed waived in certain circumstances. *State v. Nunn*, 250 Ariz. 366, ¶ 5 (App. 2020); *State v. Bolding*, 227 Ariz. 82, ¶¶ 16, 18 (App. 2011). As relevant here, a defendant may not appeal from a final judgment of conviction "if the defendant's absence prevents sentencing from occurring within ninety days after conviction and the defendant fails to prove by clear and convincing evidence at the time of sentencing that the absence was involuntary." § 13-4033(C).

**¶7**         Before a defendant's right to appeal is divested:

> (1) the defendant must receive notice that the right may be waived if his or her absence prevents sentencing from occurring within ninety days after conviction; (2) the waiver must be knowing, intelligent, and voluntary; and (3) the defendant must be provided an opportunity at sentencing to prove by clear and convincing evidence that the absence was involuntary.

*State v. Brearcliffe*, 254 Ariz. 579, ¶ 1 (2023). The state bears the burden of showing the first two elements are satisfied before the defendant's obligation to prove that her absence was involuntary is triggered. *Id.* ¶ 16. Giving a defendant general notice that her failure to appear at sentencing could result in waiver of her right to appeal is inadequate; instead, a defendant must be fully informed that she could forfeit the right to appeal by voluntarily delaying sentencing for more than ninety days. *See id.*; *Nunn*, 250 Ariz. 366, ¶ 8; *Bolding*, 227 Ariz. 82, ¶ 20; *see also* Ariz. R. Crim. P. 14.4(e)(6) (court required to inform defendant at arraignment of potential loss of right to appeal if absence delays sentencing by more than ninety days).

**¶8** The state has not met its burden here. The state appears to rely on Contreras's signed release-conditions form in its statement of facts as proof of the first two statutory elements. The signed form, however, did not put Contreras on notice as to the ninety-day delay provision under the statute. § 13-4033(C). Instead, it generally stated, "If convicted, you will be required to appear for sentencing. If you fail to appear, you may lose your right to a Direct Appeal." The court's minute entry similarly provided a general admonition: "The Defendant is advised by the Court that if he/she fails to appear for sentencing he/she waives his/her right to appeal."

**¶9** We therefore conclude Contreras was not adequately warned that she could lose her right to appeal by delaying sentencing for more than ninety days. *Brearcliffe*, 254 Ariz. 579, ¶ 16; *Nunn*, 250 Ariz. 366, ¶ 8; *Bolding*, 227 Ariz. 82, ¶ 20. And because she was not adequately warned, her obligation to prove by clear and convincing evidence at sentencing that her absence was involuntary was not triggered. Accordingly, § 13-4033(C) neither bars Contreras's appeal nor divests us of jurisdiction.

## Discussion

### I. Trial in Absentia

**¶10** We first address Contreras's argument that the trial court violated her constitutional rights to due process and confrontation when it tried her in absentia. She specifically challenges the court's failure to inquire into the reasons for her absence and to grant a continuance to allow counsel to locate her.

**¶11** Because Contreras did not object on Confrontation Clause grounds at trial, we review that component of her claim for fundamental error. *See State v. Escalante*, 245 Ariz. 135, ¶¶ 1, 12, 21 (2018) (fundamental error applies when defendant does not object at trial and requires defendant to show error, which is fundamental in nature, and resulting prejudice). We otherwise review the trial court's decision to try Contreras in absentia for an abuse of discretion, *see State v. Muniz-Caudillo*, 185 Ariz. 261, 262 (App. 1996), considering her absence "in light of the whole record," *State v. Levato*, 186 Ariz. 441, 445 (1996) (quoting *United States v. Gagnon*, 470 U.S. 522, 527 (1985)).

**¶12** In June 2021, Contreras appeared for her arraignment, at which the trial court advised her that her failure to appear at any future hearings could result in a bench warrant being issued and trial being held

in her absence.  She also signed a form that outlined her release conditions and reiterated the court's advisement:

> You have the right to be present at your trial and at all other proceedings in your case.  If you fail to appear the court may issue a warrant for your arrest and/or hold the trial or proceeding in your absence.

¶13        In October, Contreras appeared at a *Donald* hearing at which she rejected a plea offer and decided to proceed to trial.[1]  The court set a pretrial conference for January 2022, with trial to follow in February.  The court again advised Contreras that her failure to appear on those dates could result in a warrant being issued, that "the trial may go forward in . . . her absence," and that she "may be tried and convicted even though not present."

¶14        Despite these warnings, Contreras failed to appear at the pretrial conference.  Defense counsel informed the trial court that he had "not had good communication" with Contreras and was "worried about her."  Counsel requested that the trial date be vacated to allow him to locate Contreras, but, after reviewing a recording of the *Donald* hearing, agreed that Contreras had been warned the trial could proceed in her absence.  The court denied counsel's request and affirmed the trial date.

¶15        Contreras again failed to appear on the first day of trial, and counsel objected to proceeding in her absence, stating he believed it "denie[d] her of her ability to [have] a fair trial."  The court noted the objection but proceeded in absentia.

¶16        On appeal, Contreras does not argue she lacked notice of the trial date, of her right to be present at trial, or that trial would proceed in her absence.  Instead, she relies on *State v. Sainz*, 186 Ariz. 470, 473 (App. 1996), to assert that the trial court was required to inquire whether her absence was truly voluntary.

¶17        The Sixth Amendment to the United States Constitution and its corollary, article II, § 24 of the Arizona Constitution, establish and safeguard a defendant's right to be present at every stage of trial.  *See* Ariz. R. Crim. P. 19.2; *State v. Reed*, 196 Ariz. 37, ¶ 3 (App. 1999); *see also* U.S.

---

[1]*State v. Donald*, 198 Ariz. 406 (App. 2000).

5

Const. amends. V, XIV; *Levato*, 186 Ariz. at 443-44 (where right to confrontation not implicated, right to presence nonetheless protected by due process clauses under Fifth and Fourteenth Amendments). However, a defendant who voluntarily absents herself from trial relinquishes that right. Ariz. R. Crim. P. 9.1; *State v. Fettis*, 136 Ariz. 58, 59 (1983).

**¶18**    "The court may infer that a defendant's absence is voluntary if the defendant had actual notice of the date and time of the proceeding, notice of the right to be present, and notice that the proceeding would go forward in the defendant's absence." Ariz. R. Crim. P. 9.1. The rule does not require the court to "make a specific determination prior to beginning a proceeding in defendant's absence that [her] absence is voluntary especially where the record is clear that Rule 9.1 is applicable." *State v. Pena*, 25 Ariz. App. 80, 81 (1975). The defendant bears the burden of rebutting the foregoing inference, *Reed*, 196 Ariz. 37, ¶¶ 3-4, and the court must determine whether the defendant's absence was voluntary only after being asked to do so and provided with specific information indicating involuntariness, *Sainz*, 186 Ariz. at 473.[2]

**¶19**    Here, Contreras was provided notice of the trial date, of her right to attend trial, and that trial could go forward in her absence. When Contreras failed to appear at the pretrial conference and trial, defense counsel expressed a general concern for her welfare but offered no specific evidence or information to suggest that her absence was involuntary. *See State v. Suniga*, 145 Ariz. 389, 392 (App. 1985) (court properly inferred voluntary absence where counsel offered no explanation for defendant's

---

[2]Contreras interprets *Sainz* to hold that a trial court must inquire further into the reasons for a defendant's absence before proceeding in absentia when counsel expresses a general concern that the absence *may* be involuntary. But *Sainz* does not hold that the court is required to inquire further if it is merely asked by defense counsel to do so. Instead, *Sainz* outlines the procedure the court must follow if it applies Rule 9.1's inference that an absence is voluntary and proceeds to trial in absentia but is sometime *thereafter* presented with facts by the defendant to rebut the initial inference. 189 Ariz. at 473. *Sainz* instructs a court in that scenario to make a finding whether the absence was voluntary or involuntary. *Id.* If the court determines the absence was involuntary, it must then determine whether the defendant was prejudiced by the proceedings that occurred in his or her absence. *Id.* Contreras's interpretation of *Sainz* would undermine the purpose of Rule 9.1's inference and nullify the procedure set out by *Sainz*.

whereabouts); *State v. Fristoe*, 135 Ariz. 25, 34 (App. 1982) (no evidence offered by defense counsel to suggest defendant's absence anything but voluntary). Accordingly, the trial court did not abuse its discretion when it presumed that Contreras's absence was voluntary. *See* Ariz. R. Crim. P. 9.1.

**¶20** Further, Contreras has not directed us to any attempt at trial or thereafter to overcome the inference that her absence was voluntary. In fact, at sentencing, defense counsel acknowledged that Contreras had "started failing to appear at court proceedings" and that she had failed to attend her trial without any explanation. *See Suniga*, 145 Ariz. at 392 (voluntary absence inference bolstered by defendant's admission at sentencing that he had absconded).

**¶21** "There is no due process requirement for the trial court to hold a hearing on the question of the voluntariness of the absence" unless the defendant meets her burden to rebut Rule 9.1's inference. *Fristoe*, 135 Ariz. at 34. On this record, the trial court did not abuse its discretion by inferring that Contreras's absence from trial was voluntary. And because Contreras made no attempt to rebut that inference, the court did not abuse its discretion by proceeding with trial in absentia.

## II. Entrapment Defense

**¶22** Contreras contends the trial court erred by violating her constitutional right against self-incrimination when it forced counsel to assert an entrapment defense in her absence. Because Contreras failed to object on constitutional grounds below, we review solely for fundamental, prejudicial error. *See Escalante*, 245 Ariz. 135, ¶¶ 1, 12. To prevail under this standard, the defendant bears the burden of establishing that error exists, that the error was fundamental in nature, and that the error resulted in prejudice. *See id.* ¶ 21; *State v. Henderson,* 210 Ariz. 561, ¶ 20 (2005). A defendant may establish an error is fundamental by showing that the error went to the foundation of the case, took from her a right essential to her defense, or was so egregious that she could not have possibly received a fair trial. *Escalante*, 245 Ariz. 135, ¶ 21; *see also State v. Jones*, 248 Ariz. 499, ¶ 7 (App. 2020).

**¶23** To assert the affirmative defense of entrapment, the accused "must admit by the person's testimony or other evidence the substantial elements of the offense charged." A.R.S. § 13-206(A). This admission "cannot be accomplished merely by the defendant passively declining to challenge the state's evidence." *State v. Gray*, 239 Ariz. 475, ¶¶ 14-15 (2016). However, it can be established by a stipulation, an admission read into

evidence, a defendant's testimony, or a post-*Miranda*[3] statement to police "as long as the defendant does not contest the validity of the confession or raise inconsistent defenses." *Id.* The defendant bears the burden of establishing by clear and convincing evidence that:

> 1. The idea of committing the offense started with law enforcement officers or their agents rather than with the person.
>
> 2. The law enforcement officers or their agents urged and induced the person to commit the offense.
>
> 3. The person was not predisposed to commit the type of offense charged before the law enforcement officers or their agents urged and induced the person to commit the offense.

§ 13-206(B). When entrapment is sufficiently raised by the defense, the burden shifts to the state to prove beyond a reasonable doubt that the accused was not entrapped. *State v. Burciaga*, 146 Ariz. 333, 335 (App. 1985). The state may meet its burden by introducing evidence of other conduct that is of a "sufficiently similar nature to the crime charged" for the purpose of showing predisposition. *Id.* at 335-36 (emphasis omitted); *see* § 13-206(C) (entrapment not established if defendant "predisposed to commit the offense" and law enforcement "merely provided the person with an opportunity to commit the offense").

### A. Pertinent Facts

**¶24** After the drug transaction, officers arrested Contreras and transported her to a police substation, where an officer advised her of her *Miranda* rights and she agreed to answer questions. She admitted that she had traveled to Casa Grande to meet an individual and had sold him ten "30s," another common street term for fentanyl, for $100. She also indicated she had made other drug sales in the past.

**¶25** Leading up to trial, Contreras gave notice of an entrapment defense, and she later moved to preclude her recorded interview on the ground that the state had untimely disclosed it. The trial court denied the

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

motion, but the state agreed not to offer Contreras's statement concerning prior sales unless she pursued an entrapment defense. The court advised the parties that it would admit the full, unredacted interview if it became relevant, and Contreras agreed.

¶26        At trial, Contreras's opening statement centered around the theory that law enforcement had attempted numerous times to induce her into selling drugs: "If at first you don't succeed, try, try, try again." Contreras recounted each date that she and the undercover detective had communicated but had not completed a transaction, proposing that the detective was "[u]ndeterred and not willing to give up" until he was "ultimately successful."

¶27        Afterward, the case agent and the undercover detective testified in the state's case-in-chief. A copy of Contreras's interview, redacted to remove the prior-sales reference, was also admitted into evidence and played for the jury. During cross-examination of both officers, defense counsel focused on the continuous communications between Contreras and the undercover detective before they completed a transaction.

¶28        At the conclusion of the undercover detective's testimony, the trial court received a jury question asking, "Is setting a trap by narcotic task force entrapment?" The court ultimately did not ask the question. In discussing the question with the parties, however, the court inquired whether Contreras was pursuing an entrapment defense, noting that she had placed "a lot of emphasis" on "police initiating, police not giving up" and that it appeared she had been laying the groundwork to argue she was "persuaded by police to engage in th[e] drug deal." The court wondered to "what legal argument other than entrapment" these comments and questions had been relevant; Contreras responded that she had not yet presented an argument or an admission to meet the elements for an entrapment defense, that she was entitled to give notice of inconsistent defenses, and that she was not certain what defense she would pursue since the state had not yet rested its case.

¶29        Based on Contreras's opening statement and her cross-examination of the law-enforcement witnesses, the trial court concluded that an entrapment instruction would be warranted. The state then sought to introduce an unredacted version of Contreras's interview, including her statement about prior sales, in order to demonstrate her predisposition. The court concluded that Contreras had "opened the door" to the evidence by "pointing [it] out" and "harping on it" and that

Contreras's statement had become relevant. The court accordingly allowed the state to recall its case agent and introduce the unredacted interview as a new exhibit, over Contreras's objection. In her closing argument, Contreras highlighted the jury instruction on entrapment, emphasized that she had met her burden, and reiterated her prior theme, specifically arguing that she was "not guilty because she was entrapped."

## B. Self-Incrimination and Predisposition Evidence

**¶30** Contreras argues that the trial court's unilateral "decision to force" her to assert entrapment constituted fundamental error. She maintains that the alleged error "went to the foundation of the case" because it dictated the defense she pursued, allowed the state to introduce "previously excluded evidence of prior bad acts," and deprived her of her Fifth Amendment privilege against self-incrimination.[4] "An error generally goes to the 'foundation of a case' if it relieves the prosecution of its burden to prove a crime's elements, directly impacts a key factual dispute, or deprives the defendant of constitutionally guaranteed procedures." *Escalante*, 245 Ariz. 135, ¶ 18. Here, however, Contreras has shown no error, fundamental or otherwise.

**¶31** The Fifth and Fourteenth Amendments protect individuals from compulsory self-incrimination. U.S. Const. amends. V, XIV; *Malloy v. Hogan*, 378 U.S. 1, 6 (1964); *see also* Ariz. Const. art. II, § 10. Although asserting an entrapment defense requires a defendant to admit to the elements of the charged offense, *see* § 13-206(A), our supreme court has long held that such a defense "does not 'compel' self-incrimination" in violation of Fifth Amendment protections because it "is an affirmative defense—it is not a denial of an element of the offense or criminal responsibility, but instead 'attempts to excuse the criminal actions of the accused,'" *Gray*, 239 Ariz. 475, ¶¶ 16, 18 (quoting A.R.S. § 13-103(B)).

**¶32** We disagree with Contreras that the trial court forced her to assert an entrapment defense and compelled her to incriminate herself.

---

[4]Contreras further contends that it is "unclear from the record" whether pursuing an entrapment defense was a decision in which she had participated, given that she was tried in absentia. To the extent Contreras challenges defense counsel's decision to assert an entrapment defense on her behalf, Contreras must do so through a claim of ineffective assistance of counsel in a Rule 32, Ariz. R. Crim. P., proceeding. *See State v. Spreitz*, 202 Ariz. 1, ¶ 9 (2002). We therefore do not address this issue.

Contreras characterizes the court's actions as amounting to a unilateral decision that she would pursue entrapment. But as discussed above, Contreras noticed that defense prior to trial and suggested in her opening statement and her cross-examination of two law-enforcement witnesses that the idea of selling fentanyl originated with the undercover detective. Moreover, Contreras admitted all elements of the charged offense when speaking to police, A.R.S. § 13-3408(A)(7), and did not object to admitting into evidence the portion of her interview containing those statements during the state's case-in-chief.[5] *See* § 13-206(A).

**¶33** Based on the foregoing, the trial court did not err by concluding that Contreras had effectively raised an entrapment defense through her argument and questioning, warranting admission of the previously redacted statement and an instruction defining entrapment. *See* § 13-206(B)(1), (2). The court reasonably concluded that Contreras's actions had opened the door to her prior-sales statement. *See* § 13-206(C); *Burciaga*, 146 Ariz. at 335-36. And because all elements of entrapment had arguably been met, *see* § 13-206(A)-(B), and Contreras's opening statement and cross-examination questions created a significant risk of juror confusion, the court did not err by giving an entrapment instruction, *see State v. Abrams*, 164 Ariz. 185, 186 (App. 1990) (instruction proper where sufficient evidence exists from which reasonable jury could find entrapment).

**¶34** As previously discussed, defense counsel's adoption of the entrapment defense in closing argument, and his endorsement of Contreras's admission to the offense's elements in her recorded interview, did not implicate her constitutional right against self-incrimination. *Gray*, 239 Ariz. 475, ¶¶ 16-18. This is particularly true because Contreras waived her Fifth Amendment rights when speaking to police and did not contest that waiver's validity before the statement was admitted. We therefore conclude that the trial court did not force Contreras to assert an entrapment defense and did not err, let alone fundamentally, by allowing the state to present rebuttal evidence.

---

[5]At a pretrial voluntariness hearing, Contreras argued that her statements in the recorded interview were involuntary, but the trial court disagreed and allowed the state to present them. In closing argument at trial, counsel asserted that Contreras's admission to the elements of the offense was reliable but that her admission regarding past sales was involuntary. Contreras does not raise the issue of voluntariness on appeal; therefore, we do not address it.

¶35　　　　Finally, even were we to assume the trial court fundamentally erred, Contreras would be required to show she was prejudiced by the error. *See Escalante*, 245 Ariz. 135, ¶¶ 18, 21 (if appellant demonstrates error went to "foundation of a case," she must make separate showing of prejudice).　But Contreras has not shown how either the court's alleged conduct in dictating an entrapment defense or the state's introduction of her prior-sales statement could have affected the jury's verdict. *See id.* ¶ 29 (appellant must show that without error, reasonable jury could have returned a different verdict).

¶36　　　　Contreras does not identify an alternative defense that she would have pursued had the court not "forced" her to pursue entrapment, let alone explain how any such alternative could have resulted in a different outcome.[6]　Similarly, Contreras fails to show how her admission to prior drug sales could have affected the verdict in light of the compelling evidence of guilt, which included her admission to the elements of the offense, testimony regarding the communications and transaction with law enforcement, and laboratory test results confirming the pills were fentanyl. *See id.* ¶ 31 ("In applying the 'could have' standard, an appellate court should examine the entire record, including the parties' theories and arguments as well as the trial evidence.").　Because Contreras has not established prejudice from the purported error, she is not entitled to relief.

## Disposition

¶37　　　　For the foregoing reasons, we affirm Contreras's conviction and sentence.

---

[6]There may be cases in which defendants choose to pursue a "lack of intent" defense, distinct from entrapment, under which the persistent encouragement of officers might still be relevant.　In those cases, defendants arguably should be allowed to choose their own defense without being forced to admit the elements of the offense or receive an entrapment instruction.　We do not, however, address that circumstance here.