953 P.2d 536

STATE of Arizona, Appellee/Respondent.

v.

Gregorio GARCIA–CONTRERAS,
Appellant/Petitioner.

No. CR–96–0619–PR.

Supreme Court of Arizona,
En Banc.

Feb. 12, 1998.

OPINION [1].

ZLAKET, Chief Justice.

¶ 1. Defendant Gregorio Garcia–Contreras was indicted on multiple counts of child molestation and sexual abuse. The alleged victim was his twelve-year-old daughter. He was thereafter convicted on some, but not all, of the charges. For reasons unimportant to the present discussion, the judge granted a new trial, which was commenced in August of 1992. On opening day, defendant was not present in court. The judge noted for the record:

> The Court was advised this morning that the Defendant's civilian clothing had not arrived. Counsel for the Defendant requested a delay until his clothing arrived. The Court has denied the request, offered to—either the Defendant could appear in his custody clothes or waive his presence for the commencement of jury selection, and is not present at this time.

Jury selection was completed in defendant's absence that morning. The record reflects his presence in the courtroom that afternoon.

¶ 2. After three days of trial, defendant was found guilty on two of the molestation counts. He claimed on appeal that he had been improperly denied his right to be present at jury selection. The court of appeals remanded to the trial court for an evidentiary hearing regarding the circumstances surrounding defendant's absence, and new counsel was appointed.

¶ 3. After reviewing the hearing transcript, the appellate court ruled that although defendant's absence had been involuntary, any error was harmless. Defendant's trial attorney and his lawyer at the subsequent hearing each petitioned for review, which we granted only with respect to the following issue:

> [W]hether it is error to preclude a defendant who was in custody from attending the jury selection because the sheriff had not dressed the defendant in defendant's civilian clothes and the replacement civilian clothes had not yet arrived.

Grant Woods, Attorney General By Kent Cattani, Assistant Attorney General, Phoenix, for Appellee/Resondent.

Gregg Griffith, Phoenix, for Appellant/Petitioner.

---

1. An opinion filed on February 6, 1998 in this case was withdrawn by order of the court dated February 11, 1998. This opinion has been substituted in its place.

¶4. The trial record is far from clear. We do not know what ensued immediately after counsel alerted the court to defendant's lack of street clothes. We are forced to rely on the sometimes inconsistent testimony from an evidentiary hearing held three years later. At the hearing, defendant testified that on the first day of trial, he was brought from jail to the court in his prisoner clothes. He stated that his brother would bring civilian clothing to him whenever he had a court appearance. He also remembered telling his attorney that he would rather be absent from the courtroom than have prospective jurors see him in jail garb.

¶5. Defendant's brother testified that he received a call from defense counsel's secretary requesting civilian clothing. He then went to another brother's home, where items of apparel were retrieved and ironed. He delivered them to the secretary around noon.

¶6. According to defense counsel, his client was brought to court in his inmate outfit even though he had other apparel at the jail. Concerned, the lawyer called his secretary with instructions to immediately find some clothes. He then notified the judge's staff of the problem, and an off-the-record meeting was held in chambers. At this conference, counsel asked the judge for a continuance. According to the lawyer,

> it was made very clear to me he wanted to select a jury now. That my client was to select between one or two of the options he had. And then at that point the interpreter and I went back and spoke to Mr. Contreras about what happened.

Counsel then told defendant that he had to choose between not attending the jury selection or appearing in jail clothes. Defendant asked what he should do. The attorney advised him not to appear in court, but to wait until new clothing arrived. He explained, "It's my feelings [sic] if they are seen in jail clothes that is the end of the case." About this defendant, counsel noted that he

> had previously been convicted of those serious offenses ... He was aware of what could happen in a courtroom. He was aware that his life, essentially, was on the line. He did not have a cavalier attitude

about this.... He wanted to be present. Because I am the lawyer, he left the decision up to me.

When questioned as to what he might have done differently, counsel replied:

> I couldn't have a continuance for a few minutes for the clothes to arrive. I did not think that was an option; I couldn't just leave. Of course, I would have been held in contempt myself had I done that. I just did not see many options.

At the close of the evidentiary hearing, the judge stated that he had no recollection of these events.

¶7. It is plain that the trial court's refusal to grant a continuance forced the defendant to choose between two equally objectionable alternatives. He could either have appeared before the jury in prison attire, jeopardizing his Fourteenth Amendment guarantee of presumptive innocence, or sacrificed his Sixth Amendment right to be present at jury selection. Faced with this dilemma, and upon advice of counsel, defendant "chose" not to be present.

### Defendant's Constitutional Rights

¶8. An accused's "right to be present at trial is protected both by the Sixth Amendment to the federal constitution as incorporated and applied to the states through the Fourteenth Amendment, and by article II, section 24 of the Arizona Constitution." *State v. Levato*, 186 Ariz. 441, 443, 924 P.2d 445, 447 (1996) (citation omitted). Where, as here, the confrontation of witnesses is not directly implicated, "the right to presence is nevertheless protected by the due process clauses of the Fifth and Fourteenth Amendments." *Id.* (citations omitted). This encompasses the defendant's presence at jury selection. *See State v. Tudgay*, 128 Ariz. 1, 2, 623 P.2d 360, 361 (1981); Rule 19.2, Ariz.R.Crim.P. Moreover, an accused has the right, derived from constitutional fair trial guarantees, *see Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976), not to be compelled by the state to appear before a jury in prison attire. *See id.* at 512, 96 S.Ct. at

1697; *State v. Jeffers*, 135 Ariz. 404, 416, 661 P.2d 1105, 1117 (1983).

## Waiver

¶ 9. A defendant may voluntarily relinquish the right to attend trial. *See State v. Bohn*, 116 Ariz. 500, 503, 570 P.2d 187, 190 (1977); *State v. Sainz*, 186 Ariz. 470, 472, 924 P.2d 474, 476 (App.1996); Rule 9.1, Ariz. R.Crim.P. He or she may also waive the protection against being compelled to appear before a jury in prison clothes. *See Jeffers*, 135 Ariz. at 416, 661 P.2d at 1117 (attending trial in prison garb may be the "intentional relinquishment of a known right"); *see also Estelle*, 425 U.S. at 507–08, 96 S.Ct. at 1694–95 (recognizing that defendants may choose to appear before jury in prison attire). In any case, a valid waiver depends upon voluntariness. *See Sainz*, 186 Ariz. at 473, 924 P.2d at 477 (evaluating circumstances to determine whether trial absence was voluntary or involuntary); *Jeffers*, 135 Ariz. at 416, 661 P.2d at 1117 (determining whether defendant made a "voluntary election to appear in court wearing jail clothes").

¶ 10. Because defendant here elected not to be present at jury selection, we must ascertain whether this choice was voluntary. The mere prospect of appearing in prison attire does not automatically render his decision "involuntary" for the reason that "instances frequently arise where a defendant prefers to stand trial before his peers in prison garments." *Estelle*, 425 U.S. at 507–08, 96 S.Ct. at 1694–95. The record indicates, however, that defendant did not want to appear before the jury in this fashion.

¶ 11. Defendant followed the advice of his attorney, who understood the peril of appearing before a jury in jail garb. The Supreme Court has observed that such clothing serves as a

> constant reminder of the accused's condition implicit in such distinctive, identifiable attire [and] may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that... an unacceptable risk is presented of impermissible factors coming into play.

*Estelle*, 425 U.S. at 504–05, 96 S.Ct. at 1693 (citation omitted). Voluntary choice presupposes meaningful alternatives. Put another way, a voluntary waiver of the right to be present requires true freedom of choice. Because defendant was without meaningful alternatives, his decision not to attend jury selection must be considered involuntary.

¶ 12. The state argues that it did nothing to restrict defendant's right to appear in civilian clothes. Therefore, it says, he was not "compelled by the state against his will." *Jeffers*, 135 Ariz. at 416, 661 P.2d at 1117. We think this argument reflects an inappropriately narrow view of the issue. It is the harm to defendant that must be the focus of our analysis. In *Bentley v. Crist*, for example, the Ninth Circuit observed that "an accused who is forced to stand trial in prison garb because of financial inability to obtain other attire is under a compulsion equal to that of the prisoner who is not allowed to don readily available civilian attire." 469 F.2d 854, 856 (9th Cir.1972). Thus, the prosecution's lack of direct involvement with this defendant's condition did not obviate the onerous decision facing him, or the compulsion under which he was placed.

¶ 13. We understand that the degree of a defendant's responsibility for such a predicament affects the extent to which his or her actions may rightfully be deemed involuntary. We should be wary of accuseds who attempt to "frustrate the process of justice," *Estelle*, 425 U.S. at 505 n. 2, 96 S.Ct. at 1693 n. 2, by purposely arriving at the courthouse without civilian clothing. No one suggests here that defendant's lack of such clothing was either planned or purposeful, even though inadequacies in the record prevent us from knowing exactly why his clothes were not available. Nothing indicates that defendant ever arrived at any other proceeding without appropriate attire.

¶ 14. An incarcerated defendant's ability to control his situation is limited, and even the most comprehensive clothing delivery system may, on occasion, be thwarted by a flat tire, a traffic accident, or other unanticipated occurrence. Thus, while we agree that it is a defendant's responsibility to ensure the availability of civilian clothing at

trial, we reject the idea that every failure in this regard can sensibly be characterized as "voluntary." Mindful that we should "indulge every reasonable presumption against the loss of constitutional rights," *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970)(citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)), we agree with the court of appeals that this defendant did not voluntarily waive his right to be present. On the contrary, he apparently wanted to be in attendance and knew the importance of this decision based on his prior courtroom experience. When presented with this dilemma, he relied on his lawyer, who gave the only advice he thought acceptable under the circumstances.

### Applicability of Harmless Error Review

¶ 15. In *Arizona v. Fulminante,* the United States Supreme Court distinguished between ordinary trial error that, in the context of all the evidence, is amenable to quantitative assessment, and structural error, which affects the basic "framework within which the trial proceeds" and implicates the "entire conduct of the trial from beginning to end." 499 U.S. 279, 307–08, 309–10, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991); *see also State v. Gaines,* 188 Ariz. 511, 514, 937 P.2d 701, 704 (App.1997). A criminal trial undermined by structural error " 'cannot reliably serve its function as a vehicle for determination of guilt or innocence....' " *Fulminante,* 499 U.S. at 310, 111 S.Ct. at 1265 (quoting *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986)). Moreover, because structural error is impossible to quantify, it "def[ies] analysis by 'harmless-error' standards." *Id.* at 309, 111 S.Ct. at 1265.

### Analyzing "Presence Error"

¶ 16. A constitutional violation involving a defendant's involuntary absence from trial—"presence error"—may be subject to harmless error review. *See Hegler v. Borg,* 50 F.3d 1472, 1476 (9th Cir.1995); *Fulminante,* 499 U.S. at 306–07, 111 S.Ct. at 1263 (citing *Rushen v. Spain,* 464 U.S. 114, 117–18 & n. 2, 104 S.Ct. 453, 454–55 & n. 2,

78 L.Ed.2d 267 (1983), in support of the proposition that the denial of a defendant's right to be present can be "trial error"); *Sainz,* 186 Ariz. at 474, 924 P.2d at 478. On occasion, however, presence error may "so undermine the integrity of the trial process that [it] will necessarily fall within that category of cases requiring automatic reversal." *Hegler,* 50 F.3d at 1476.

In sum, we think that before a court can classify a "presence error," the character of the proceeding from which the defendant was excluded must be evaluated to ascertain the impact of the constitutional violation on the overall structure of the criminal proceeding.

*Id.* at 1477.

¶ 17. In this case, the defendant was involuntarily excluded from the entire jury selection proceeding. As noted in *State v. Ayers,* "harmless error has generally been found only where the accused's absence has been from some minor portion of the selection process," rather than from the whole thing. 133 Ariz. 570, 571, 653 P.2d 27, 28 (App.1982) (holding defendant's involuntary absence from entire jury selection process to be reversible error). Total exclusion runs afoul of "one of the substantial rights of the prisoner to be brought face to face with the jurors at the time... challenges [are] made." *Lewis v. United States,* 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892) (citation omitted). We cannot ignore "what sudden impressions and unaccountable prejudices [defendants] are apt to conceive upon the bare looks and gestures of another, and how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury...." *Id.* at 376, 13 S.Ct. at 138 (citation omitted).

¶ 18. An accused's presence at jury selection protects the effective exercise of his challenges. *See United States v. Washington,* 705 F.2d 489, 497 (D.C.Cir.1983). Even though counsel may conduct the *voir dire,* a defendant has the right to provide input, and an opportunity to monitor the attorney's performance. The defendant can also "personally see and know what is being done in the case," and "see to it that what does take place is in accord with law and good prac-

tice." *Goodroe v. Georgia,* 224 Ga.App. 378, 480 S.E.2d 378, 381 (1997) (quoting *Wilson v. Georgia,* 212 Ga. 73, 90 S.E.2d 557, 558–59 (1955)). The accused has the power, "if present, to give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself." *Snyder v. Massachusetts,* 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). We cannot tell what opportunities might have been lost in the present case.

¶ 19. Additionally, the interplay between potential jurors and a defendant, while often subtle, is both immediate and continuous. Here, the trial judge's introduction to the jury panel included the following statement: "[T]he Court Reporter will be present at all times, the attorneys will be present, myself, my clerk, *and the Defendant will be present.*" No one can tell what the prospective jurors might have thought when all of the key players were introduced save the defendant, whose whereabouts were left mysteriously unexplained: "The defendant is [sic] will be here shortly...." Defendant's absence may have damaged him in the eyes of the jury— some may have thought he had irresponsibly failed to show up for the first day of his trial.

¶ 20. Had defendant been present, he might have been able to influence the jury selection process. We are unable to meaningfully quantify the resulting harm. The matter is thus not amenable to harmless error review. *See Hegler,* 50 F.3d at 1476.

¶ 21. We are sensitive to the "day-to-day realities of courtroom life," *Rushen,* 464 U.S. at 119, 104 S.Ct. at 456, and appreciate that the grant or denial of a continuance should generally be disturbed only upon a showing of a clear abuse of discretion and prejudice to defendant. *See State v. Amaya–Ruiz,* 166 Ariz. 152, 164, 800 P.2d 1260, 1272 (1990). Although the record is silent, the defendant's lack of appropriate clothing no doubt posed practical problems for the trial judge. The restless milling about of numerous prospective jurors, an uncertain delivery time for defendant's clothes, and the possible unavailability of an afternoon jury panel, may all have factored into his decision.

¶ 22. Nevertheless, we hold that by denying the short continuance that defendant requested, the trial court effectively deprived

him of his constitutional right to be present for jury selection. In so doing, the court abused its discretion. Moreover, because the error was structural, we need not find actual prejudice. The convictions are reversed and the case remanded for a new trial.

JONES, V.C.J., and FELDMAN, MOELLER and MARTONE, JJ., concur.