NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSEPH ASHLEY DICKENSON, *Appellant.*

No. 1 CA-CR 14-0683
FILED 11-17-2015

Appeal from the Superior Court in Maricopa County
No.  CR 2011-101288-001
The Honorable Dean M. Fink, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Charles R. Krull
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Maurice Portley joined.

---

**D O W N I E**, Judge:

¶1        Joseph Ashley Dickenson appeals his convictions for identity theft, aggravated identity theft, money laundering, forgery, and fraudulent schemes and artifices.  Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), defense counsel has searched the record, found no arguable question of law, and asked us to review the record for reversible error. *See State v. Richardson*, 175 Ariz. 336, 339 (App. 1993).  Dickenson was given the opportunity to file a supplemental brief *in propria persona*, but he has not done so.  For the following reasons, we modify Dickenson's presentence incarceration credit but otherwise affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

¶2        Police officers were called to a Scottsdale mall after Dickenson tried to open a credit account using L.D.'s personal information.  Officers later discovered Dickenson had used L.D.'s information to open other accounts and purchase merchandise, and they identified additional victims.

¶3        Dickenson was charged with two counts of identity theft, (counts 1 and 3), class four felonies in violation of Arizona Revised Statutes ("A.R.S.") section 13-2008; one count of aggravated identity theft (count 12), a class three felony in violation of A.R.S. § 13-2009(A)(1); one count of money laundering in the second degree (count 2), a class three felony in violation of A.R.S. § 13-2317(B)(4); five counts of forgery (counts 4, 7, and 9–11), class four felonies in violation of A.R.S. § 13-2002(A)(1); and three counts of fraudulent schemes and artifices (counts 5–6 and 8), class two felonies in violation of A.R.S. § 13-2310.

¶4        At trial, the State presented the following evidence: In December 2010, Dickenson went to an Arizona Motor Vehicle Division

---

[1]        "We view the evidence in the light most favorable to sustaining the verdicts and resolve all inferences against appellant." *State v. Nihiser*, 191 Ariz. 199, 201 (App. 1997).

("MVD") office and obtained an Arizona identification card ("ID card") using L.D.'s name and birthdate, but bearing a photograph of himself. Dickenson thereafter: (1) purchased a Sam's Club membership and two watches under L.D.'s name; (2) used the ID card to open a checking account and line of credit at a U.S. Bank in L.D.'s name; (3) opened a Nordstrom account and purchased items using L.D.'s information; (4) visited a watch store, introduced himself as L.D., attempted to trade in a watch, and filled out a trade form using L.D.'s information; and (5) used L.D.'s information to open a credit account and purchase a watch at Fred Meyer Jewelers. Dickenson later tried to open a credit account with Ben Bridge Jewelers using L.D.'s information but was detained by police due to a fraud alert on L.D.'s account. At that time, Dickenson had in his possession:

> shopping bags from Nordstrom containing . . . several pairs of shoes, and some cologne. He had a Fred Meyer bag containing a Tissot watch, and box, and receipt. He had a Montblanc business card holder in his pocket. Inside that business card holder was a Sam's Club card, and Arizona ID card, and an RRX Express janitorial card. All of those cards had the photograph of the defendant and the name of [L.D.]

¶5 Dickenson also had truck keys and three cell phones in his possession. Officers searched the truck and phones after obtaining warrants. They found Compass Bank documents bearing the names of L.D. and T.M., U.S. Bank documents with L.D.'s name, a watch, and a Sam's Club receipt for the watch. The cell phones contained texts with the names, birthdates, and social security numbers of several people, including F.J. and T.M.

¶6 Dickenson failed to appear for trial, but the jury viewed his booking photo and videos or photos from surveillance systems at each of the businesses he visited, with the exception of Fred Meyer Jewelers. A Fred Meyer employee testified Dickenson presented his ID card, which depicted the same person who applied for credit.

¶7 The jury found Dickenson guilty of all counts. He was sentenced to concurrent terms of imprisonment, with the longest being eight years. He received 809 days of presentence incarceration credit. Dickenson timely appealed.

## DISCUSSION

¶8 We have read and considered the brief submitted by defense counsel and have reviewed the entire record. *See Leon*, 104 Ariz. at 300.

With the exception of presentence incarceration credit, we find no error. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, and the sentences imposed were within the statutory range. Dickenson was represented by counsel at all critical phases of the proceedings. The jury instructions were consistent with the offenses charged, and the record reflects no irregularity in the deliberation process.

## I.   Trial *In Absentia*

**¶9**        Under the Sixth and Fourteenth Amendments to the United States Constitution and Article 2, Section 24, of the Arizona Constitution, a criminal defendant has a right to be present at trial. *State v. Levato*, 186 Ariz. 441, 443 (1996); *see also* Ariz. R. Crim. P. 19.2 ("defendant has the right to be present at every stage of the trial"). A defendant may, however, voluntarily relinquish that right. *State v. Garcia-Contreras*, 191 Ariz. 144, 147, ¶ 9 (1998). A valid waiver depends on the voluntariness of the absence. *Id.* "The trial court may infer that a defendant's absence is voluntary if the defendant had personal knowledge of the time of the proceeding, his right to be present, and the warning that the proceeding would take place in his absence if he failed to appear." *State v. Muniz-Caudillo*, 185 Ariz. 261, 262 (App. 1996).

**¶10**        During pretrial proceedings, Dickenson was warned several times, including in a release order, that "[y]ou have a right to be present at all pretrial and trial proceedings concerning this case. If you fail to appear, a warrant will be issued for your arrest and the proceeding may go forward in your absence." At one pretrial hearing, Dickenson indicated he understood this warning.

**¶11**        On the first day of trial, the following exchange took place:

[Court]:  Have you heard from [Dickenson]?

[Defense Counsel]:  Not since the last court date, sir.

[Court]:  I see that . . . he lives in North Carolina. Do you know if he's in the state?

[Defense Counsel]:  I do not, sir. We've been trying to contact him to make the final trial preparations and have had not -- success. I talked to my secretary about ten minutes ago, there are no messages in my voicemail. And we have been calling the number, which will not accept messages from us.

. . .

[Court]: [State], you would affirm that Mr. Dickenson had awareness of court dates?

[State's Counsel]: Yes, Your Honor. At the trial management conference, he was again affirmed about the trial date today and Judge O'Connor reminded him that if he failed to appear, this trial can go forward in his absence.

[Court]: [Defense Counsel], anything on this issue?

[Defense Counsel]: . . . [The State] is correct that [Dickenson] was in court, and that he was advised of his obligation to be here, and of the potential of the trial proceeding in his absence.

¶12        Dickenson was present for the final trial management conference on August 25, 2011. The minute entry reflects that the court affirmed the trial date of September 7, 2011 at that time and stated: "The Defendant is advised, and indicates that he understands, that if he fails to appear on the date and time set for trial, a Bench Warrant may issue and trial may proceed in his absence." Because Dickenson received notice of the trial date and time, was warned of the consequences of failing to appear, and indicated he understood the consequences, the court properly conducted the trial in his absence.

## II.     Sufficiency of the Evidence

¶13        The record includes substantial evidence to support the jury's verdicts. *See State v. Tison*, 129 Ariz. 546, 552 (1981) (In reviewing for sufficiency of the evidence, "[t]he test to be applied is whether there is substantial evidence to support a guilty verdict."). "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290 (1996). Substantial evidence "may be either circumstantial or direct." *State v. Henry*, 205 Ariz. 229, 232, ¶ 11 (App. 2003).

### A.     Identity Theft and Aggravated Identity Theft

¶14        For counts 1, 3, and 12, the State was required to prove Dickenson: (1) knowingly possessed or used any personal identifying information of another (2) without consent and (3) with the intent to obtain or use the other's identity for any unlawful purpose or to cause loss whether any such economic loss actually occurred. A.R.S. § 13-2008(A). "Personal identifying information" means any written or electronic data that does or

purports to provide information concerning a name, social security number, or birthdate. A.R.S. § 13-2001(10).

¶15            Dickenson used L.D.'s personal identifying information to obtain an Arizona identification card, which he later used to obtain credit and merchandise in L.D.'s name at least three separate times. The jury saw a certified MVD document showing the information Dickenson provided to obtain the ID card, which included L.D.'s name and birthdate. The jury also viewed the ID card, which was found on Dickenson's person, and which contained his photo with L.D.'s name and birthdate. L.D. testified he did not know Dickenson and never gave him permission to possess or use his personal identifying information.

¶16            For count 12, the State was required to prove Dickenson committed identity theft as to three or more persons. A.R.S. § 13-2009(A)(1). Besides L.D., the jury was presented with evidence that officers found "personal information belonging to different people; names, birth dates, social security numbers, addresses, and bank account numbers," including that of T.M. and F.J., in Dickenson's cell phones. At trial, T.M. viewed a printout of data extracted from the phones. She testified it included her name, birthdate, and social security number. Additionally, a search of Dickenson's vehicle revealed Compass Bank documents bearing T.M.'s name. T.M. testified she had never opened an account with Compass Bank, did not know Dickenson, and did not authorize him to possess her personal identifying information. F.J. likewise testified her name, birthdate, and social security number were in one of the phones. F.J. did not know Dickenson and did not give him permission to possess her personal identifying information. Although there was no documentation establishing actual use of F.J.'s information, the jury could have reasonably inferred Dickenson's intent to use it for an unlawful purpose. *See State v. Greene*, 192 Ariz. 431, 440, ¶ 39 (1998) (state of mind may be inferred from behavior); *State v. Routhier*, 137 Ariz. 90, 99 (1983) ("Criminal intent, being a state of mind, is shown by circumstantial evidence."). Substantial evidence supports the convictions for identity theft and aggravated identify theft.

B.      **Money Laundering**

¶17            For count 2, the State was required to prove Dickenson intentionally or knowingly made a false statement, misrepresentation, false certification, false entry, or omitted a material entry in any application, financial statement, account record, or customer receipt. A.R.S. § 13-2317(B)(4). A U.S. Bank manager testified a man matching Dickenson's

description came into the bank, identified himself as L.D., and asked to open a checking account and line of credit. A trial exhibit included documents the man filled out, reflecting his use of L.D.'s name, birthdate, and social security number. Dickenson signed L.D.'s name on the application under a certification stating he was the person opening the account. The jury also viewed surveillance photos of Dickenson applying for the accounts. His booking photo was in evidence, so the jury could compare it to the surveillance photos.

¶18        Substantial evidence supports the conviction for money laundering.

### C.        Forgery

¶19        For counts 4, 7, 9, 10, and 11, the State was required to prove that Dickenson, with the intent to defraud, falsely made, completed, or altered a written instrument. A.R.S. § 13-2002(A)(1).  As discussed *supra*, evidence showed that Dickenson completed checking account and credit line applications at U.S. Bank using L.D.'s identity.  The jury viewed the application he completed and the surveillance photos of him filling it out.

¶20        A loss prevention manager for Nordstrom testified he researched that store's records and learned "there had been an account fraudulently opened under another subject's name." The jury was able to examine an exhibit that showed a temporary Nordstrom credit card bearing a signature in L.D.'s name and surveillance footage associated with at least one of the corresponding purchases.  The items recovered from Dickenson's shopping bags matched the items on the Nordstrom receipts.

¶21        A manager at Fred Meyer Jewelers testified a man matching Dickenson's description applied for credit using the ID card and provided L.D.'s social security information as his own.  The man gave L.D.'s name for the credit application and purchased a watch under L.D.'s name.

¶22        An employee of a watch store testified a man matching Dickenson's description came into the store and completed a trade document that lists L.D.'s name under "customer's name" and was signed under L.D.'s name. The jury also viewed surveillance footage of the transaction.

¶23        Finally, a Ben Bridge Jewelers credit application was admitted into evidence that contained L.D.'s personal information and the number of the ID card with Dickenson's photo. A surveillance video of the individual applying for credit was also introduced into evidence.

¶24 Substantial evidence supports the convictions for forgery.

### D. Fraudulent Schemes and Artifices

¶25 For counts 5, 6, and 8, the State was required to prove that Dickenson, pursuant to a scheme or artifice to defraud, knowingly obtained any benefit by means of false or fraudulent pretenses, representations, promises, or material omissions. A.R.S. § 13-2310(A).

¶26 The evidence discussed *supra* provided the requisite proof. Dickenson obtained a line of credit at Nordstrom and Fred Meyer Jewelers using L.D.'s information and received merchandise using that credit. In addition, an operations manager for Sam's Club testified he pulled receipts that included purchases under L.D.'s name for a new club membership and watches. The associated surveillance photos show the individual making these purchases. Police officers recovered one watch and a Sam's Club receipt from Dickenson's vehicle.

¶27 Because Dickenson opened multiple accounts and purchased merchandise using L.D.'s personal information, he received benefits through false pretenses. The jury could have reasonably found that he acted pursuant to a scheme to defraud.

## III. Presentence Incarceration Credit

¶28 "All time actually spent in custody pursuant to an offense until the prisoner is sentenced to imprisonment for such offense shall be credited against the term of imprisonment." A.R.S. § 13-712(B). "In custody" means actual incarceration in a prison or jail. *See State v. Reynolds*, 170 Ariz. 233, 235 (1992). When calculating presentence incarceration credit, a defendant is entitled to a full day of credit for any partial day spent in custody. *State v. Carnegie*, 174 Ariz. 452, 454 (App. 1993). But a defendant is not entitled to credit for the day of arrest unless he was booked or taken into custody that day. *See Reynolds*, 170 Ariz. at 235–36.

¶29 Dickenson was initially arrested on January 7, 2011. He was taken to a jail cell, interviewed, and then released after a hearing on January 8, 2011. He received a booking number during that time.

¶30 The court awarded 809 days of presentence incarceration credit for the period of July 5, 2012 to September 22, 2014. However, it appears Dickenson was also in custody for purposes of awarding credit on January 7 and 8, 2011. We therefore modify the sentencing order to reflect an additional two days of presentence incarceration credit.

**CONCLUSION**

**¶31** We affirm Dickenson's convictions but modify his sentence to reflect 811 days of presentence incarceration credit. Counsel's obligations pertaining to Dickenson's representation in this appeal have ended. Counsel need do nothing more than inform Dickenson of the status of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). On the court's own motion, Dickenson shall have thirty days from the date of this decision to proceed, if he desires, with an *in propria persona* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: ama