NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE of ARIZONA, *Appellee*,

*v.*

JESSICA LYNNETTE DRESSIG, *Appellant*.

No. 1 CA-CR 18-0443
FILED 2-13-2020

Appeal from the Superior Court in Mohave County
No.  S8015CR201601655
The Honorable Richard Weiss, Judge (retired)

**REMANDED WITH INSTRUCTIONS**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Janelle A. McEachern Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Randall M. Howe and Judge Jennifer B. Campbell joined.

_____

**M c M U R D I E**, Judge:

¶1        Jessica Lynette Dressig appeals her convictions and sentences for one count each of possession of dangerous drugs for sale, possession of narcotic drugs for sale, possession of marijuana for sale, and possession of drug paraphernalia. Because the record is silent concerning whether Dressig voluntarily waived her right to be present at trial, we remand to the superior court with instructions to hold a hearing to determine if Dressig's absence from the trial constituted a knowing, intelligent, and voluntary waiver of that right.

## FACTS AND PROCEDURAL BACKGROUND[1]

¶2        On December 2, 2016, based on information gathered from an informant who alleged Dressig was involved in the sale of illegal drugs, law enforcement officers executed a search warrant on the home where they believed she lived. The officers knocked on the door to the house, and an individual later identified as Dressig's co-tenant opened the door and was immediately detained. The officers then attempted to do a protective sweep of each room of the home. When they reached the door to the master bedroom, however, they found it locked, but could hear someone yelling on the other side of the door. The officers realized the individual behind the door was not going to unlock it, so one of the officers broke through the door and entered the room. Inside the room, the officers found Dressig lying on the bed holding a small dog. The officers attempted to detain Dressig, but she refused to follow their commands and resisted. The officers eventually succeeded in placing Dressig in handcuffs, removed her from the room, and searched the home.

_____

[1]        We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against Dressig. *State v. Burgess*, 245 Ariz. 275, 277, ¶ 3 (App. 2018).

¶3          During the search of Dressig's bedroom, the officers discovered large quantities of marijuana, methamphetamine, and heroin stashed in various areas, including on the nightstand by the bed, in a tote bag resting on the bedroom floor, and in the bedroom's closet. The officers also discovered syringes, baggies, scales, marijuana grinders, and methamphetamine and marijuana pipes in the bedroom and master bathroom connected to it. The officers arrested Dressig and took her to the Bullhead City police station, where she agreed to an interview and to waive her *Miranda*[2] rights. During the interview, Dressig admitted to possessing marijuana and a small amount of the heroin but denied possessing the large amounts of methamphetamine and heroin found in the master bedroom. She likewise denied that she sold drugs.

¶4          That same day, an initial appearance and arraignment hearing was held before the Bullhead City Justice Court, in which Dressig appeared via video. After the proceeding, the justice court entered a Determination of Release Conditions and Release Order (the "Release Order"), setting a $25,000 appearance bond. The Release Order also contained the following warning:

> **CONSEQUENCES OF VIOLATING THIS ORDER**: You have the right to be present at your trial and at all other proceedings in your case. If you fail to appear the court may issue a warrant for your arrest and/or hold the trial or proceeding in your absence. **IF CONVICTED, YOU WILL BE REQUIRED TO APPEAR FOR SENTENCING. IF YOU FAIL TO APPEAR, YOU MAY LOSE YOUR RIGHT TO A DIRECT APPEAL.**

Below this warning, the Release Order contained a signature block for the defendant to acknowledge she understood the information in the form and the consequences if she violated its conditions. Dressig, however, did not sign the Release Order.

¶5          A grand jury issued a supervening indictment charging Dressig with the crimes noted above. Dressig was arraigned again before the superior court, which affirmed her release conditions, including the $25,000 appearance bond. Unable or unwilling to post a bond for that amount, Dressig remained in custody.

---

2          *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶6            In March 2017, following several attempts to persuade the court to modify Dressig's release conditions, Dressig's counsel and the State stipulated to releasing her on her own recognizance, and the court accepted the stipulation. After her release, Dressig's attendance at pretrial proceedings became sporadic. She failed to appear at the final management conference shortly before the trial, and the court issued a bench warrant for her arrest. Dressig remained absent during the trial.

¶7            From October 30 to November 1, 2017, the court conducted a three-day jury trial. At the beginning of each day of Dressig's trial, her counsel noted her absence and moved for a continuance, citing his lack of contact with Dressig and uncertainty that he or his office had told Dressig of the trial date. The State objected to each motion, arguing that Dressig's lack of contact and absence were voluntary. After hearing the parties' arguments, the court denied the motions, finding that it was Dressig's obligation to maintain contact with her counsel and that "[i]t appears from the file that she was previously advised that the trial could take place without her being present." Each day of the trial went forward without Dressig, and at the trial's conclusion, the jury found Dressig guilty as charged.

¶8            On March 24, 2018, the police arrested Dressig in Bullhead City pursuant to the bench warrant. At the sentencing hearing, Dressig's counsel explained to the court that because Dressig's absence had delayed sentencing for more than 90 days, he believed Dressig had forfeited her right to a direct appeal under Arizona Revised Statutes ("A.R.S.") section 13-4033(C). The court agreed with Dressig's counsel that the plain language of the statute appeared to bar Dressig's right to appeal. The court then sentenced Dressig to concurrent prison terms for each count totaling 10 years' imprisonment, with 183 days' presentence incarceration credit. In an apparent change of heart, Dressig's counsel filed a notice of appeal shortly thereafter.

¶9            Dressig's appellate counsel filed a brief per *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), certifying that, after a diligent search of the record, she found no arguable question of law that was not frivolous. Counsel asked this court to search the record for arguable issues. *See Penson v. Ohio*, 488 U.S. 75 (1988); *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999). Dressig filed a *pro se* supplemental brief. In her supplemental brief, Dressig argued that there was insufficient evidence to support her convictions for possession of dangerous drugs for sale and narcotic drugs for sale because it was not shown that she possessed the methamphetamine and heroin found in the

bedroom. After reviewing the record, we issued a *Penson* order requesting that the parties brief two additional issues: (1) whether the Release Order constituted adequate notice to Dressig that the trial could proceed in her absence if she failed to appear; and (2) whether that same form constituted adequate notice to Dressig that she would lose her right to appeal if she voluntarily delayed sentencing by more than 90 days. Our review of the record identified no other arguable issues.

## DISCUSSION

¶10        At the outset, we address the second issue raised in our *Penson* order: whether Dressig lost her right to appeal her convictions and sentences under A.R.S. § 13-4033(C). Dressig's absence caused sentencing to be delayed by more than 90 days, which ordinarily would forfeit her right to appeal, A.R.S. § 13-4033(C). However, on the record before us, we are unable to determine whether Dressig had been informed that she forfeited her right to appeal because Dressig did not sign the document in the record that contained such a warning—the Release Order. *See State v. Bolding*, 227 Ariz. 82, 88, ¶ 20 (App. 2011) (concluding A.R.S. § 13-4033(C) can only be applied constitutionally if a defendant is informed of the consequences of delaying sentencing). In their respective *Penson* briefs, Dressig argues, and the State concedes, that the record fails to show Dressig received adequate notice that her right to appeal could be forfeited. Consequently, we accept the State's concession and conclude A.R.S. § 13-4033(C) "cannot be applied to [Dressig] in a constitutional manner." *Bolding*, 227 Ariz. at 88, ¶ 20. Thus, we have jurisdiction over Dressig's appeal under A.R.S. §§ 13-4031 and -4033(A) and turn to address the substantive issues raised by Dressig and identified in our *Penson* order.

**A.    Sufficient Evidence Supports Dressig's Convictions for Possession of Dangerous Drugs for Sale and Narcotic Drugs for Sale.**

¶11        In her supplemental brief, Dressig argues there was insufficient evidence to support her convictions for possession of dangerous drugs for sale and possession of narcotic drugs for sale because the state failed to prove she knowingly possessed the methamphetamine or heroin.

¶12        We review *de novo* whether substantial evidence was presented to support a conviction. *State v. Burns*, 237 Ariz. 1, 20, ¶ 72 (2015). "'Substantial evidence' to support a conviction exists when 'reasonable persons could accept [it] as adequate and sufficient to support a conclusion

of [a] defendant's guilt beyond a reasonable doubt.'" *Id.* at 20–21, ¶ 72 (first alteration in original) (quoting *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011)). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *West*, 226 Ariz. at 562, ¶ 16 (quoting *State v. Mathers*, 165 Ariz. 64, 66 (1990)). "Both direct and circumstantial evidence should be considered in determining whether substantial evidence supports a conviction." *Id.* "Criminal intent, being a state of mind, is shown by circumstantial evidence. [A] [d]efendant's conduct and comments are evidence of [her] state of mind." *State v. Bearup*, 221 Ariz. 163, 167, ¶ 16 (2009) (quoting *State v. Routhier*, 137 Ariz. 90, 99 (1983)).

¶13            "The sufficiency of the evidence must be tested against the statutorily required elements of the offense." *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005). Under A.R.S. § 13-3407(A)(2), a person is guilty of possession of dangerous drugs for sale if it is shown that the defendant (1) knowingly possessed, (2) a dangerous drug (here, methamphetamine), (3) for sale. The same elements apply to prove a defendant guilty of possession of narcotic drugs for sale, except that the drug in question must be a narcotic drug (here, heroin). A.R.S. § 13-3408(A)(2). Because Dressig only challenges whether the State produced sufficient evidence for a jury to conclude beyond a reasonable doubt that she knowingly possessed a dangerous or narcotic drug—and because sufficient evidence was presented concerning the other elements—we only address that element.

¶14            "Possess" in this context means "knowingly to have physical possession or otherwise exercised dominion or control over property." A.R.S. § 13-105(34). "Possession may be actual or constructive." *State v. Gonsalves*, 231 Ariz. 521, 523, ¶ 9 (App. 2013). "Constructive possession can be established by showing that the accused exercised dominion and control over the drug itself, or the location in which the substance was found." *State v. Teagle*, 217 Ariz. 17, 27, ¶ 41 (App. 2007). A person's "mere presence at a location where [drugs] are found is insufficient to establish knowledgeable possession or dominion and control over [the drugs]." *Id.* at 27–28, ¶ 41 (quoting *State v. Jung*, 19 Ariz. App. 257, 261 (1973)). But "it is not necessary to show that a defendant exercised exclusive possession or control over the substance itself or the place in which the illegal substance was found; control or right to control is sufficient." *State v. Curtis*, 114 Ariz. 527, 528 (App. 1977).

¶15 Here, the State presented overwhelming evidence at the trial for the jury to reasonably conclude Dressig exercised dominion and control over the bedroom and knew that methamphetamine and heroin were located there. The testimony of several officers involved in searching Dressig's residence established that: (1) Dressig was found in the bedroom where the methamphetamine and heroin were found; (2) the door to the bedroom was locked and had to be broken down to allow the officers' entry; and (3) Dressig refused to comply with commands and had to be forcibly removed from the bedroom. The testimony of the officers concerning the subsequent search of the bedroom, supported by photographs of the scene, showed that large quantities of methamphetamine and heroin were found scattered and hidden around Dressig's room, including on a nightstand by her bed, in a tote bag resting on the bedroom floor, and in the bedroom closet. Testimony established that the amount of each drug seized was substantial in both weight and value.

¶16 Dressig acknowledged the bedroom was hers, and the testimony of the other resident living in the home confirmed Dressig was renting the bedroom where the methamphetamine and heroin were found. Finally, regarding possession of the heroin found in the bedroom specifically, Dressig admitted in her interview that she possessed heroin but claimed she did not own the amount alleged by the interviewing officer.

¶17 Taken together, Dressig's conduct and statements during the search of the home and after her arrest, the large amounts of both substances found in her bedroom, and the evidence presented concerning her dominion and control of the bedroom, provided overwhelming support for a jury to find Dressig constructively possessed the methamphetamine and heroin found there. Accordingly, sufficient evidence supports Dressig's convictions for possession of dangerous and narcotic drugs for sale.

**B.     Because it is Unclear Whether Dressig was Informed of Her Right to Attend the Trial and that the Trial Could Proceed in Her Absence, Remand for a Hearing on this Issue is Necessary.**

¶18 Dressig argues she never received adequate notice of the consequences of her failure to appear at trial because the Release Order is unsigned and "[t]here is no other evidence that, at any other point going forward, reference was made to [the Release Order] or similar warnings." In response, the State implicitly concedes the unsigned Release Order is insufficient but claims other evidence within the record demonstrates Dressig received notice of her right to attend the trial and that the trial would proceed in her absence.

**¶19**       A defendant's "right to be present at trial is protected both by the Sixth Amendment to the federal constitution as incorporated and applied to the states through the Fourteenth Amendment, and by article II, section 24 of the Arizona Constitution." *State v. Levato*, 186 Ariz. 441, 443 (1996). This right is further protected by rule in Arizona. *See* Ariz. R. Crim. P. 19.2 ("A defendant in a felony or misdemeanor trial has the right to be present at every stage of the trial . . . ."). Like many of the constitutional protections afforded to criminal defendants, however, the right to attend the trial may be waived. *State v. Garcia-Contreras*, 191 Ariz. 144, 147, ¶ 9 (1998). The critical inquiry in this context is whether the defendant's absence is voluntary, as "a valid waiver depends upon voluntariness." *Id.*

**¶20**       Under Arizona Rule of Criminal Procedure ("Rule") 9.1, a court may infer that a defendant's absence is voluntary, and thus a valid waiver of the right to be present, "if the defendant had actual notice of the date and time of the proceeding, notice of the right to be present, and notice that the proceeding would go forward in the defendant's absence." If these requirements are met, the defendant bears the burden of rebutting the presumption that his or her absence was voluntary. *State v. Bohn*, 116 Ariz. 500, 503 (1977). Because the superior court's "finding of voluntary absence, and, therefore, the existence of a waiver of the right to be present, is basically a question of fact[,] [w]e will not upset a . . . finding of voluntary absence . . . absent an abuse of discretion." *State v. Bishop*, 139 Ariz. 567, 569 (1984) (citation omitted) (quotation omitted). However, "in any proceeding involving the surrender of Constitutional rights, it must appear from the record that the waiver was knowingly, intelligently and voluntarily made." *State v. Avila*, 127 Ariz. 21, 25 (1980).

**¶21**       Here, Rule 9.1's first requirement was met. The minute entry from a settlement conference Dressig attended approximately a month before trial indicates the superior court affirmed the actual date and time of the trial after the proceeding. Thus, Dressig received "actual notice of the date and time" of the trial. Ariz. R. Crim. P. 9.1. However, there is nothing in the record before us that provides a basis on which this court can determine whether Dressig received the other two predicate warnings necessary to justify the superior court's determination that her absence constituted a knowing, intelligent, and voluntary waiver of her right to attend the trial.

**¶22**       The Release Order, which contained both notices required by Rule 9.1, is unsigned. Without Dressig's signature, this court cannot presume Dressig received the warnings listed in the Release Order at the

time it was issued.[3] Acknowledging the Release Order is unsigned, the State nevertheless asserts two portions of the record demonstrate Dressig was informed of her right to attend the trial and of the consequences if she failed to appear. First, the State points to the minute entry from Dressig's arraignment in the superior court, which states:

> The Court admonishes the Defendant and advises her of the disclosure process and advises her that her failure to appear at any further hearing will result in the issuance of a bench warrant.

> \*     \*     \*

> Discussion ensues regarding release conditions; the Court finds that the Defendant is being held on a $25,000.00 bond.

> **IT IS ORDERED** affirming prior release conditions.

Second, the State claims the superior court's finding that it appeared from the court file that Dressig had been "previously advised that the trial could take place without her being present" is evidence that Dressig was informed that the trial could proceed in her absence.

**¶23** But the cited evidence is at best ambiguous. First, concerning the arraignment minute entry, the reference to discussions surrounding the consequences of failing to appear and of release conditions certainly could have included notice to Dressig of her right to be present and a warning that the trial could proceed in her absence. But the minute entry does not refer to either, and without a transcript of the arraignment, which was not provided to this court, we cannot determine whether such a notice or warning was given. Second, the superior court's finding that "it appear[ed] from the file" that Dressig had received notice that trial could proceed in her absence, offers no support for the State's position because we cannot determine on what portion of the record the court based that finding. The

---

[3] When forms like the Release Order are signed, they are typically considered adequate notice to justify the inference contemplated by Rule 9.1. *See, e.g.*, *State v. Tudgay*, 128 Ariz. 1, 3 (1981) (finding requirements of Rule 9.1 satisfied by defendant's signature of release order containing notice of right to attend and warning that proceedings could begin in defendant's absence); *Bohn*, 116 Ariz. at 503 (same); *State v. Pena*, 25 Ariz. App. 80, 80–81 (1975) (same); *see also* Ariz. R. Crim. P. Form 6 (release order containing warnings required by Rule 9.1).

court could have found this finding on some part of the file that was not included in the record on appeal, or it could have erroneously based its conclusion on the unsigned Release Order. The balance of the record is likewise vague. Although there is another minute entry that references Dressig being "admonished," it offers no greater detail than the arraignment minute entry.

¶24            Thus, without more, this court is left with the functional equivalent of a silent record, as nothing in the record before us today provides this court a basis on which it can determine whether Dressig received the notices required by Rule 9.1. *See State v. Baker*, 217 Ariz. 118, 121, ¶ 15 (App. 2007) (minute entry stating the defendant waived the right to a jury trial, without more, was insufficient as evidence of waiver). Given these ambiguities, and because the waiver of a constitutional right cannot be found or presumed from a silent record, we cannot conclude the superior court's inference of voluntariness was justified. *See Avila*, 127 Ariz. at 25 ("[I]n any proceeding involving the surrender of Constitutional rights, it must appear from the record that the waiver was knowingly, intelligently and voluntarily made. Such condition of mind, moreover, will not be presumed from a silent record.").

¶25            Under these circumstances, a remand is appropriate for a hearing to determine whether Dressig was adequately informed of her right to be present and that the trial could proceed in her absence if she failed to appear. *See, e.g.*, *State v. Perez*, 115 Ariz. 30, 32 (1977) (when the record provided an insufficient basis to determine whether a defendant was advised of rights articulated in Rule 9.1, a remand for an evidentiary hearing was necessary); *State v. Cook*, 115 Ariz. 146, 150 (App. 1977) (remanding for hearing to determine circumstances surrounding defendant's absence), *supplemented*, 118 Ariz. 154 (App. 1978), *overruled in part on other grounds by State v. Fettis*, 136 Ariz. 58, 59 (1983). If the superior court determines Dressig received adequate notice of her right to be present and the consequences of failing to appear before absconding, Dressig's convictions and sentences are affirmed. However, if the superior court concludes Dressig did not receive such notice and that her absence was, therefore, involuntary, her convictions and sentences must be set aside. Whatever the result of the hearing, the party adversely affected by the ruling may then appeal. A.R.S. § 13-4032(4) (the State may take an appeal from "[a]n order made after judgment affecting the substantial rights of the state"); A.R.S. § 13-4033(A)(3) (same but for appeal taken by the defendant).

## CONCLUSION

**¶26**      The case is remanded to the superior court for proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:  AA