NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JORDAN DUKE VENABLE, *Appellant.*

No. 1 CA-CR 20-0316
FILED 6-15-2021

Appeal from the Superior Court in Maricopa County
No. CR2019-120567-001
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice M. Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jeffrey L. Force
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

_____

**W I N T H R O P**, Judge:

¶1             Jordan Duke Venable ("Venable") appeals his convictions and sentences for one count of disorderly conduct and one count of threatening or intimidating.  He argues the court committed reversible error when it revoked his right to represent himself, removed him temporarily from the courtroom after a brief outburst, and failed to establish his knowing and voluntary waiver of his right to wear street clothes during the trial.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2             Venable got into an argument with his grandmother that culminated in him retrieving a knife from their kitchen and threatening to cut her with it.  He was later indicted for disorderly conduct, assault, and threatening or intimidating.

¶3             Prior to his trial, Venable underwent a mental examination pursuant to Arizona Rule of Criminal Procedure 11 and was found competent to stand trial.  Shortly thereafter, Venable waived his right to counsel and began representing himself.  A month later, however, the court revoked Venable's right to represent himself after he argued with the judge, refused to follow the rules of procedure, and could not understand the proceedings at the final trial management conference.  Venable was represented by counsel throughout the trial.

¶4             Also, during the final trial management conference, Venable's counsel discussed with the court getting Venable clothing for the trial.  Venable refused to speak with his counsel about his clothing size, and the court warned Venable that if he did not provide his clothing size to counsel, he might have to wear his prison jumpsuit during the trial.  The court cautioned Venable that being dressed in a prison jumpsuit "has a negative connotation" and advised Venable if he "would cooperate with [his counsel] to get those sizes, [counsel would] make clothing available;

otherwise [Venable would] simply have to attend trial dressed in [his] orange jumpsuit which is not something that's very favorable."

¶5        Days later at the trial setting hearing, Venable's counsel informed the court that Venable "refuse[d] to dress out," "said he will not dress out during trial," and still had not given his counsel any sizing, so counsel had obtained clothing in "every size" that might fit Venable. The court again cautioned Venable that if he chose not to dress in street clothes then the jury would know he was in custody, but told Venable it was his choice how to dress.

¶6        On the first day of trial, Venable arrived in his prison clothes. Before the jury arrived in the courtroom, the judge asked Venable, "[Y]ou've decided that you don't want to be dressed in civilian clothes for the trial; is that right?" Venable replied, "I'll just wear this." The court confirmed with Venable's counsel that there were "clothes available for [Venable] . . . if he wanted them" and then proceeded with the trial.

¶7        In addition, at the start of the trial, the court warned Venable that if he was disruptive during the trial, he could be excluded from the courtroom. On the second day of trial, when it was time for Venable's counsel to give an opening statement, Venable stated in the presence of the jury, "I got one thing to say, [the witnesses] are both lying bitches. I plead not guilty. I'll plead this case. And I got lawsuits on both of them already and they're not supposed to be my judge or attorney." The court immediately excused the jury and then warned Venable that was "the type of outburst that [would] exclude [him] from the courtroom." When Venable refused to respond, the court removed him from the courtroom.

¶8        While Venable was absent from the courtroom, the court and jury heard the first witness' direct testimony. The court then excused the jury and brought Venable back into the courtroom, asking for Venable's assurance that he would have no more outbursts and warning he would again be removed if he could not follow the court rules. Venable refused to respond in the affirmative, but he eventually wrote a note saying "5th" that the court interpreted to mean Venable was exercising his 5th Amendment right and would not speak. Venable was present for the remainder of the trial, including the cross-examination and redirect of the first witness.

¶9        The jury found Venable guilty of one count of disorderly conduct and one count of threatening or intimidating. The court sentenced Venable to a presumptive term of 3.75 years in prison. This timely appeal followed. We have jurisdiction pursuant to Article 6, Section 9, of the

Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A).

## ANALYSIS

### I.   *Revocation of Venable's Right to Represent Himself*

**¶10**          Venable argues the superior court improperly revoked his right to represent himself because his behavior did not rise to the level of serious disruption that would justify revocation, and the court did not give him a chance to learn appropriate court behavior.

**¶11**          "A trial court's decision to revoke a defendant's self-representation is reviewed for an abuse of discretion." *State v. Gomez*, 231 Ariz. 219, 222, ¶ 8 (2012).  Although "[t]he right to counsel under both the United States and Arizona Constitutions includes an accused's right to proceed without counsel and represent himself," *State v. Lamar*, 205 Ariz. 431, 435, ¶ 22 (2003), that right is contingent on the defendant being "able and willing to abide by rules of procedure and courtroom protocol," *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984); *accord State v. Hidalgo*, 241 Ariz. 543, 554, ¶ 44 (2017) ("Self-representation may be revoked if a defendant fails to comply with court rules or orders.").

**¶12**          Here, the court informed Venable that he needed to "act like a lawyer" and "comply with the rules of [the] court" if he was going to represent himself.  Following this directive, the court explained that the trial date would be accelerated and that Venable would need to have his fingerprints taken.  Venable interrupted the judge and responded that he did not "want to wait for all this bullshit."  The court again warned Venable that he needed to "follow the rules of [the] court" and avoid using profanity. Venable continually interrupted the judge and refused to answer direct questions.  When the court warned Venable that it was considering revoking his right to represent himself, Venable responded, "That wasn't my fucking judge anyway, and that's why I'm suing you."  Although it is not clear from the transcript who Venable was addressing at this point, following this outburst, the court revoked Venable's right to self-representation and stated Venable was "incapable of conducting himself in accordance with the Rules of Procedure" and unable to understand the court process.

**¶13**          Venable demonstrated he was unwilling to follow the rules of procedure and courtroom protocol, as was necessary to maintain his right to self-representation.  *See McKaskle*, 465 U.S. at 173; *Hidalgo*, 241 Ariz. at 554, ¶ 44.  Even after being warned of the potential consequences of his

actions, Venable interrupted others and repeatedly used profanity. When the court tried to explain the court processes or ask Venable questions, Venable was uncooperative and refused to give direct answers. On this record, the court did not abuse its discretion in revoking Venable's right to represent himself.

## II. *Venable's Removal from the Courtroom*

**¶14** Next, Venable contends the court improperly removed him from the courtroom, depriving him of his right to confront the first witness during the state's direct examination.

**¶15** Although "[a] criminal defendant has the right to be physically present at every critical stage of a trial," a defendant may "forfeit his right to attend judicial proceedings if, after being warned by the court, he continues to behave in such a disorderly, disruptive, and disrespectful way that a proceeding cannot take place with the defendant present." *State v. Forte*, 222 Ariz. 389, 392, ¶¶ 7, 9 (App. 2009) (internal quotation marks omitted).

**¶16** A constitutional violation involving a defendant's removal from the trial is generally subject to harmless-error review unless it so severely undermines the integrity of the trial process that it requires automatic reversal. *State v. Garcia-Contreras*, 191 Ariz. 144, 148, ¶ 16 (1998). Accordingly, we consider the character of the proceeding from which the defendant was excluded to evaluate the impact of the constitutional violation. *Id.*; *see, e.g.*, *State v. Ayers*, 133 Ariz. 570, 571 (App. 1982) (acknowledging a defendant's absence "from some minor portion of the [jury] selection process" was harmless error). A trial judge "confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Illinois v. Allen*, 397 U.S. 337, 343 (1970).

**¶17** In the instant case, the court warned Venable at the start of the trial that if he was disruptive during the trial, he could be excluded from the courtroom. Venable had shown a pattern of disrespectful and disruptive behavior in prior proceedings, and the court had repeatedly cautioned Venable about the potential consequences of his disorderly behavior. Here, Venable was excluded for only a portion of the first witness' testimony and was able to return to the courtroom for the cross and redirect examination of that witness after he implied he would no longer speak out during the proceedings. Following that, Venable was present for the remainder of the trial.

¶18        The superior court acted within its discretion in excluding Venable from a small portion of the trial after his outburst, considering the warnings Venable had previously received during the trial and across months of prior proceedings.  The court instructed the jury not to consider Venable's comments about the witnesses or his temporary absence in deciding the case, but to decide the case "solely upon the evidence and testimony presented in court."  Venable has not shown the court erred in removing him, and even if there was error, it was harmless because there was no indication Venable's removal during a portion of one witness' testimony had any bearing on the outcome of the trial.

###        III.        *Venable's Right to Wear Street Clothing During Trial*

¶19        Finally, Venable argues the court erred because it failed to establish that he knowingly and voluntarily waived his right to wear street clothes during the trial.

¶20        Because Venable did not object to the alleged error at trial, it is subject to fundamental error review.  *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).  "[T]he first step in fundamental error review is determining whether trial error exists."  *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018).

¶21        A defendant's "appearance in court in jail clothes must have been *compelled* by the state against his will" to violate the defendant's rights and constitute error.  *State v. Jeffers*, 135 Ariz. 404, 416 (1983).  Here, Venable refused to provide his sizing for street clothes on various occasions.  Multiple times, the court cautioned Venable that choosing to wear prison clothes could result in the jury having a negative reaction.  Although Venable consistently refused to cooperate with his counsel about clothing, Venable's counsel still brought clothes in multiple sizes to the trial so that Venable would have something to wear if he chose to change his clothes.  Even then, and despite further admonition by the court, Venable declined to wear street clothes and explicitly affirmed, "I'll just wear this."  On this record, Venable fails to prove any error occurred, let alone fundamental error.  *See Escalante*, 245 Ariz. at 142, ¶ 21.

¶22        Venable also contends the court should have conducted a colloquy or dialogue to ensure Venable understood the court's admonition about the negative connotations that could result from wearing prison clothes.  But it is not necessary that the court specifically conduct a colloquy to affirm a defendant's voluntary waiver of his right to wear street clothes. *See Estelle v. Williams*, 425 U.S. 501, 512 (1976) (explaining the trial court

cannot "be faulted for not asking the respondent or his counsel whether he was deliberately going to trial in jail clothes"). Regardless, the court here did have a specific and repetitive dialogue with Venable about his clothing options, that it was his decision what to wear, and that the jury might negatively perceive his decision. The court's comments and questions elicited a non-ambiguous verbal response from Venable that he would wear his prison clothes. On this record, the court did not err in any respect concerning this issue.

**CONCLUSION**

¶23        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

7