NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

COSMOS GUADALUPE GASTELUM, *Appellant.*

No. 1 CA-CR 23-0150
FILED 01-27-2026

Appeal from the Superior Court in Yavapai County
No. P1300CR202200032
The Honorable Debra R. Phelan, Judge

**AFFIRMED**

COUNSEL

Law Offices of Stephen L. Duncan P.L.C., Scottsdale
By Stephen L. Duncan
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Eric K. Knobloch
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Judge Paul J. McMurdie joined.[1]

---

**B R O W N**, Judge:

**¶1**         This appeal is presented to us pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969).  Defense counsel has searched the record on appeal and advised us there are no meritorious grounds for reversal.  Gastelum was given the opportunity to file a supplemental brief and has done so.  Our obligation is (1) to ascertain whether counsel has "conscientiously performed" their duty to review the record for arguable issues, and (2) to conduct our own review of the record for reversible error.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).

**¶2**         Our initial review of the record revealed non-frivolous issues, and under *Penson v. Ohio*, 488 U.S. 75 (1988), we ordered supplemental briefing on (1) whether the trial court committed reversible error by failing to conduct additional questioning of a prospective juror ("Juror 33") during voir dire or to sua sponte strike Juror 33 for cause; and (2) whether the prosecutor's comments on Gastelum's decision not to testify at trial require reversal.  The parties filed their respective briefs, and for the reasons discussed below, we conclude that Gastelum has failed to establish reversible error.

## BACKGROUND

**¶3**         On January 1, 2022, M.M., a minor,  was staying at Gastelum's home after a New Year's Eve party.  Early in the morning, Gastelum committed several sex acts against M.M.  After M.M. told Gastelum to

---

[1]       Judge Paul J. McMurdie was a sitting member of this Court when the matter was assigned to this panel of the Court.  He retired effective December 31, 2025.  In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court designated Judge Paul J. McMurdie as a judge *pro tempore* of the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

leave, her sister picked her up and took her to M.M.'s grandmother's home. Later that day, M.M. spoke with a police officer, a forensic interviewer with Yavapai Family Advocacy Center, and a sexual assault nurse examiner ("Nurse"). The Nurse performed an exam on M.M., which revealed injuries to M.M.'s vagina and anus consistent with penetration.

¶4        Police arrested Gastelum that day, and a grand jury later indicted him on one count of molestation of a child (Count 1) in violation of A.R.S. § 13-1410, and four counts of sexual conduct with a minor, in violation of A.R.S. § 13-1405. The sexual conduct charges (Counts 2–5) alleged that Gastelum had (1) digitally penetrated M.M.'s vagina with his finger, (2) digitally penetrated her anus, (3) engaged in masturbatory contact of "penis to vulva," and (4) penetrated M.M.'s anus with his penis.

¶5        M.M., who was 14 years old at the time of the jury trial held in February 2023, testified that Gastelum had touched her vagina and that afterward he pulled down her pants and "put his penis inside [her] butt," causing her pain. She denied that he had put his penis in her vagina or that he had inserted his finger in her vagina or anus. But the officer who first interviewed M.M. testified that M.M. informed the officer that she recognized Gastelum's penis being pushed against her vagina. The Nurse likewise confirmed that M.M. relayed similar information, and that Gastelum had "put his finger in [her] butt" and her vagina, and that he had attempted to put his penis in her vagina but did not. The Nurse testified that M.M. had injuries consistent with the alleged acts. A forensic scientist testified that an analysis of anal swabs taken from M.M. matched Gastelum's DNA profile at "10 YSTR locations" and thus Gastelum "and all of his paternally related male relatives cannot be excluded as the contributor." Gastelum did not testify.

¶6        The jury convicted Gastelum on four of the five counts, acquitting him of sexual conduct with a minor based on the allegation that he digitally penetrated M.M.'s anus. The court sentenced Gastelum to presumptive, consecutive terms for each count, resulting in a 17-year sentence for molestation and 20-year sentences for each sexual conduct with a minor conviction. Gastelum appealed and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033.

## DISCUSSION

¶7        In his *Penson* brief, Gastelum argues (1) the trial court erred by failing to sua sponte strike a juror for cause, and (2) the prosecutor improperly commented on his decision not to testify at trial. In his

supplemental pro per brief, Gastelum argues that his conviction for molestation and two of his convictions for sexual conduct with a minor should be vacated based on multiplicity concerns and insufficient evidence.

### A.     Biased Juror

¶8          Gastelum argues the trial court erred by failing to strike Juror 33 for cause based on that juror's responses to questions about the testimony of law enforcement officers.  Before trial, the court provided written questionnaires to the prospective jurors, which included the following:

> [T]he Judge will instruct you that you cannot believe the testimony of a law enforcement officer over that of a civilian witness simply because of their status as law enforcement. Would you be able to follow this instruction?

Juror 33 answered "no" to this question.

¶9          On the first day of trial during jury selection, the court and the parties conducted voir dire with the prospective jurors.  The following exchange occurred between the court and Juror 33:

> [THE COURT:]  I had a couple of follow-up questions for just a few of you individually based on my review of the surveys with the attorneys . . .
>
> All right.  This is Juror 33.  Juror 33, could you stand for me first.  On your online survey, I could not tell if this was a genuine response or just clicking through on answers, so I am just going to ask you the question that was posed in the survey and ask for your answer.
>
> The question is: The judge will instruct you that you cannot believe the testimony of a law enforcement officer over that of a civilian witness simply because of their status as law enforcement.  Would you be able to follow that instruction?
>
> [JUROR 33]:  *It would be difficult for me*.
>
> THE COURT:  Can you elaborate on that, please?
>
> [JUROR 33]:  *I am a supporter of the police department and I will take their word over somebody else's in that respect*.

THE COURT: That's why I wanted to follow up with you on that question. Thank you, Juror 33.

(Emphasis added.)

Neither party nor the court asked Juror 33 any other questions. Nor did either party challenge Juror 33 for cause. Juror 33 was ultimately selected to sit on the jury and was not selected as an alternate after closing arguments.

¶10 Under Arizona Rule of Criminal Procedure ("Rule") 18.4(b), "[t]he court, on motion or on its own, must excuse a prospective juror or jurors from service in the case if there is a reasonable ground to believe that the juror or jurors cannot render a fair and impartial verdict." Gastelum did not object to Juror 33's inclusion on the jury at trial. Without a timely objection or challenge for cause, we review a court's failure to sua sponte strike a juror for cause for fundamental error. *State v. Bible*, 175 Ariz. 549, 573 (1993); *State v. Molina*, 211 Ariz. 130, 134, ¶ 15 (App. 2005).

¶11 Gastelum suggests we should review any error in not striking Juror 33 for structural error. "Structural error is a narrow category" of trial error that "'deprive[s] defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence.'" *State v. Trudell*, 258 Ariz. 290, 293, ¶ 16 (App. 2024) (quoting *State v. Ring*, 204 Ariz. 534, 552, ¶ 45 (2003)). Gastelum argues "[t]he fairness and impartiality of juries are fundamental to the integrity of the legal system," and that accordingly, "empaneling of a biased juror is a structural error that affects the integrity of the legal system." He relies on *State v. Anderson*, 197 Ariz. 314 (2000), a capital case in which the trial court excluded jurors for cause who voiced objections to the death penalty; the court did not allow additional voir dire of these jurors, and our supreme court reversed. *Id.* at 318, 321, ¶¶ 5, 16.

¶12 But we are not persuaded by Gastelum's reliance on *Anderson*. In *Anderson*, our supreme court held that striking jurors without giving the defense the chance to rehabilitate the jurors was structural error, reasoning in part that "[e]rrors involving the composition of the court or jury affect the legitimacy of the entire proceeding, leaving nothing to measure or weigh and requiring reversal." *Id.* at 323–24, ¶¶ 21–23. Unlike the defendant in *Anderson*, Gastelum had the opportunity, at the very least, to rehabilitate Juror 33 by conducting additional voir dire or challenging them for cause. *See id.* at 318, ¶ 5; *cf. State v. Garcia-Contreras*, 191 Ariz. 144, 148–49, ¶¶ 17–20 (1998) (finding structural error when a defendant was

involuntarily excluded during jury selection and unable to effectively exercise challenges to potential jurors). Thus, we disagree with Gastelum's argument that the trial court's failure to strike Juror 33 was structural error. Instead, our standard of review here is fundamental error, which requires Gastelum to show: (1) trial error occurred; (2) that error was fundamental; and (3) the error prejudiced him. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). Fundamental errors are those which (1) go to the foundation of the case, (2) take away from the defendant a right essential to their defense, or (3) are so egregious that the defendant could not possibly have received a fair trial. *Id.*

**¶13** Juror 33's responses about law enforcement testimony gave the trial court reasonable grounds to believe the juror could not render a fair and impartial verdict. *State v. Bingham*, 176 Ariz. 146, 147 (App. 1993) ("A juror's inclination to credit the testimony of police officers more than other witnesses is grounds for dismissing the juror."). Neither party nor the court ever received later assurances that Juror 33 could set aside the prejudice in favor of law enforcement testimony. Under such facts, the court should have removed the juror under Rule 18.4(b), and the failure to do so was error. *See Bingham*, 176 Ariz. at 147 (concluding the record showed "unrebutted evidence of prejudice sufficient to require removal" because the trial court "made no further inquiry" about a juror's expressed predisposition to favor testimony of police officers).

**¶14** The State contends the juror's bias was rehabilitated through several subsequent questions posed by the parties to the venire as a whole, and Juror 33 did not indicate at any of these points an inability to serve fairly and impartially. But none of these questions, or the related discussion with the potential jurors, addressed the specific bias Juror 33 expressed. Thus, we reject the State's contention that these questions sufficiently rehabilitated Juror 33.

**¶15** We also conclude that the court's error was fundamental. "Even a single partial juror violates a defendant's constitutional right to a fair trial." *State v. Lehr*, 227 Ariz. 140, 151, ¶ 49 (2011) (quotation omitted). Because the "right to a jury composed of unbiased, impartial jurors is protected by the United States and Arizona constitutions," *State v. Jimenez*, 255 Ariz. 550, 553, ¶ 4 (App. 2023), the court's failure to sua sponte strike Juror 33, at a minimum, deprived Gastelum of a constitutional right essential to his defense, *Escalante*, 245 Ariz. at 141, ¶ 19. However, to secure reversal of his convictions, Gastelum must also show the error prejudiced him. *Id.* at 142, ¶ 21. To make this showing, Gastelum must show that, absent the error, "a reasonable jury could have reached a different verdict."

*Id.* at 144, ¶ 29 (citation modified). This "could have" standard is not easily satisfied; it is an objective inquiry that excludes "imaginative guesswork." *Id.* at ¶ 31.

**¶16** Gastelum's briefing provides no explanation as to how the failure to strike Juror 33 prejudiced his case. Gastelum does not even mention, much less analyze, the "could have" standard for showing prejudice. *See Escalante*, 245 Ariz. at ¶¶ 29, 31. Instead, he merely recites the principle that the "inclusion of a potentially biased juror undermines the defendant's right to a fair trial." But that assertion is more relevant to whether any error was *fundamental*, not *prejudicial*. *See id.* at 141, ¶ 18. Gastelum never discusses this error as it relates to the evidence presented at trial, the parties' arguments, or any other portions of the record that would show what role the error played in the trial. *Id.* at 144, ¶ 31; *see also State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) ("Prejudice is a fact-intensive inquiry, the outcome of which will depend upon the type of error that occurred and the facts of a particular case." (citation modified)); *State v. Peraza*, 239 Ariz. 140, 149–50, ¶ 37 (App. 2016) (noting the defendant "bears the burden to show he was prejudiced" by the error, and that the "fact-intensive inquiry . . . required to establish prejudice" necessarily differs from case to case). Because Gastelum has neglected to connect this error to any factual analysis of the record, he has not met his burden of demonstrating prejudicial error.

### B.     Failure to Testify

**¶17** Gastelum argues the prosecutor improperly commented on his decision not to testify at trial. During the rebuttal closing argument, the prosecutor argued in part as follows:

> So let's talk about credibility of witnesses, because [defense counsel] read you a portion of that instruction but he also left out some key parts. It's on page three of your jury instructions. In evaluating testimony, you should use the tests for truthfulness that people use in determining matters of importance in everyday life—there's that life experience and common sense that you get to take in the jury room with you—including such factors as the witness' ability to see or hear or know the things the witness testified to. I'm going to pause there. There were two witnesses to this crime: [M.M.] and the defendant. And, luckily, we live in America where he doesn't have to take the stand and say anything if he doesn't want to. Luckily, we live in a country where it's not

enough to just point a finger at someone and say guilty, hang him up. Luckily, we live in a country where I am held to a burden. But there are two witnesses, two eyewitnesses, and so we have to go beyond that. We have to look at other evidence.

Because Gastelum did not object to this argument, we will reverse only if he has established fundamental, prejudicial error.

**¶18** "It is well-established that both federal and state laws prohibit a prosecutor from making any comment, direct or indirect, about a defendant's failure to testify." *State v. Ramos*, 235 Ariz. 230, 234, ¶ 10 (App. 2014); *see also* U.S. Const. amend. V; Ariz. Const. art. 2, § 10. Such comments reflect a "penalty imposed by courts for exercising a constitutional privilege [against self-incrimination]" by making assertion of that right costly. *Griffin v. California*, 380 U.S. 609, 614 (1965). Whether a statement is improper turns upon the context in which it is made and whether the jury would "naturally and necessarily" perceive the statement to be a comment on the defendant's decision not to testify. *State v. Acuna Valenzuela*, 245 Ariz. 197, 221, ¶ 104 (2018). To be improper, the comment must also be adverse, meaning that it "support[s] an unfavorable inference against the defendant and, therefore, operate[s] as a penalty imposed for exercising a constitutional privilege." *State v. Mata*, 125 Ariz. 233, 238 (1980); *see also Lakeside v. Oregon*, 435 U.S. 333, 338–39 (1978) ("It is clear from even a cursory review of the facts and the square holding of the *Griffin* case that the Court was there concerned only with *adverse* comment, whether by the prosecutor or the trial judge—comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (citation modified)).

**¶19** Standing alone, the prosecutor's comment that Gastelum "doesn't have to take the stand and say anything if he doesn't want to" is not improper. Statements that "simply affirm[] the defendant's right not to testify at trial" are not adverse. *State v. Church*, 175 Ariz. 104, 106–07 (App. 1993) (concluding that the prosecution's statement in closing that the defendant "need not testify, and this is not something that [the jury] should consider in deliberations on this case, because it is a right that he has" was not adverse). But we cannot ignore that this statement was made just after the prosecutor emphasized to the jury that the defendant was one of two witnesses to the crimes in question. Considering that the other witness the prosecutor mentioned did testify, the prosecutor's comments implied that Gastelum had relevant information he failed to provide by deciding not to testify; the comments were improper. *See State v. Trostle*, 191 Ariz. 4, 16 (1997) (finding improper the prosecutor's comment in rebuttal that "only

two individuals knew detailed information of the crime: '[o]ne is [a co-conspirator] and the other one is sitting right here at the table asking you not to hold him accountable through his lawyer'"); *State v. Thompson*, 252 Ariz. 279, 299, ¶ 77 (2022) ("As relevant here, we have held that a prosecutor cannot point out that the defendant supplied no evidence concerning a factual circumstance if the defendant is the only person who could provide that evidence because that serves as a comment on the defendant's failure to testify."). Such comments violated Gastelum's constitutional rights and thus constitute fundamental error. *Ramos*, 235 Ariz. at 236, ¶ 16; *Escalante*, 245 Ariz. at 141, ¶ 19.

**¶20** Again, Gastelum must establish prejudice. *Escalante*, 245 Ariz. at 142, ¶ 21. But as with his briefing on juror bias, Gastelum fails to develop an argument based on any fact in the record or evidence presented at trial as to how the error prejudiced him. Because he has failed to bear his burden of engaging in the necessary, fact-intensive analysis required under fundamental error review, reversal is not warranted. *See Dickinson*, 233 Ariz. at 531, ¶ 13 (explaining that a defendant "must affirmatively prove prejudice and may not rely upon speculation to carry his burden" (citation modified)); *Peraza*, 239 Ariz. at 149–50, ¶ 37.

**¶21** Our conclusion that Gastelum has not established fundamental error should not be taken as approval of the prosecutor's comments. There is little reason to make even non-adverse comments that draw the jury's attention to a defendant's exercise of the right to remain silent. *See Church*, 175 Ariz. at 107. Such comments are not only unhelpful, they also come perilously close to violating the constitutional rights of criminal defendants. The wiser decision for prosecutors is to avoid making any comments about a defendant's decision not to testify.

## C. Multiplicity

**¶22** In his pro se supplemental brief, Gastelum contends his charges raise concerns of multiplicity, which "occurs when a defendant is charged with a single offense in multiple counts," raising concerns about double jeopardy. *State v. Rix*, 256 Ariz. 125, 136, ¶ 34 (App. 2023). Multiplicity can be triggered when (1) the same conduct violates two different criminal statutes, or (2) multiple violations of the same statute are based on the same conduct. *State v. Jurden*, 239 Ariz. 526, 529, ¶¶ 10–11 (2016). When a person is charged for multiple violations of the same statute, the central question is whether the actions charged violate the criminal statute in "separate and distinct ways." *State v. Moninger*, 258 Ariz. 18, 22, ¶ 12 (2024).

**¶23**        "A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse . . . with any person who is under eighteen years of age."  A.R.S. § 13-1405(A).  As defined by statute, "sexual intercourse" includes "penetration into the penis, vulva or anus by any part of the body or by any object or masturbatory contact with the penis or vulva."  A.R.S. § 13-1401(4).  "A person commits molestation of a child by intentionally or knowingly engaging in . . . sexual contact . . . with a child who is under fifteen years of age."  A.R.S. § 13-1410(A).  Sexual contact means, among other things, "direct or indirect touching, fondling or manipulating of any part of the genitals."  A.R.S. § 13-1401(3)(a).

**¶24**        Concerning the charges for which Gastelum was convicted, the State alleged Gastelum committed sexual conduct with a minor by committing the following acts: (1) penetrating M.M.'s vagina with his finger, (2) penetrating M.M.'s anus with his penis and (3) engaging in masturbatory contact with M.M.'s vulva with his penis.  Each act involves a different way of engaging in sexual intercourse.  Thus, the convictions do not result in multiplicity.  *See Moninger*, 258 Ariz. at 24, ¶ 23 (noting that a defendant could commit luring a minor for sexual exploitation under A.R.S. § 13-3554 multiple times if different types of sexual conduct are involved).

### D.    Sufficiency of the Evidence

**¶25**        Gastelum also contends his convictions are not supported by the evidence.  Substantial evidence supporting a conviction is "proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt."  *State v. West*, 226 Ariz 559, 562, ¶ 16 (2011) (citation modified).  Gastelum argues M.M.'s testimony conflicted with her earlier statements to other witnesses, and at trial, she could not remember Gastelum penetrating her anus or vagina with his finger; nor did she recall him placing his penis in her vagina.  But the fact that M.M.'s testimony conflicted with previous statements she made to others does not establish a lack of substantial evidence.  The weight to be assigned to the evidence and the credibility of witnesses are questions that lie exclusively with the jury; we will not reweigh the evidence or reassess credibility on appeal.  *State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013).

**¶26**        The evidence presented at trial supports Gastelum's convictions.  To prove that Gastelum committed molestation of a child, the State needed to show that Gastelum "intentionally or knowingly engag[ed] in or caus[ed] a person to engage in sexual contact . . . with a child who is

under fifteen years of age." A.R.S. § 13-1410. Sexual contact includes "any direct or indirect touching, fondling or manipulating of any part of the genitals." A.R.S. § 13-1401(A)(3)(a). M.M. testified that Gastelum touched her vagina while lying down next to her before pulling down her pants. Such touching, even through clothing, constitutes molestation. *State v. Mendoza*, 234 Ariz. 259, 260, ¶ 6 (App. 2014).

¶27 The State needed to prove that Gastelum "intentionally or knowingly engag[ed] in sexual intercourse . . . with any person who is under eighteen years of age" to convict Gastelum of sexual conduct with a minor. A.R.S. § 13-1405(A). Sexual intercourse is defined as "penetration into the penis, vulva or anus by any part of the body . . . or masturbatory contact with the penis or vulva." A.R.S. § 13-1401(A)(4); *see also State v. Marshall*, 197 Ariz. 496, 506, ¶ 39 (App. 2000) (explaining that "one cannot penetrate the vagina without also contacting or penetrating the vulva"). Gastelum's convictions reflect three ways of engaging in sexual intercourse: (1) penetrating M.M.'s vagina with his finger (Count 2), (2) engaging in masturbatory contact against M.M.'s vulva with his penis (Count 4), and (3) penetrating M.M.'s anus with his penis (Count 5).

¶28 Substantial evidence supports Gastelum's convictions. As to Count 5, M.M. testified that Gastelum "put his penis inside [her] butt," that he went "all the way inside," causing her pain. Though M.M. did not specifically use the term "anus," a jury could reasonably infer from her description of events that Gastelum did penetrate her anus. As to Counts 2 and 4, Gastelum is correct that M.M. disclaimed that he put his finger in her vagina or engaged in masturbatory contact with his penis against her vagina. But other witnesses testified that M.M. did inform them that such conduct occurred the same day the crimes were committed. The officer who first interviewed M.M. testified that M.M. reported "she felt a firm object" and moments later recognized it was Gastelum's penis being pressed against her vagina. The Nurse testified that M.M. made similar statements that Gastelum had put his finger in her vagina; this was corroborated by the results of the exam the Nurse conducted. It was not unreasonable for the jury to give more weight to these statements than M.M.'s testimony at trial. M.M. acknowledged during her testimony that her memory had faded since the crimes took place, and an expert witness for the State testified that memories of traumatic events can fade. Gastelum has not shown the evidence is insufficient evidence to support the jury's verdicts.

**CONCLUSION**

**¶29** After reviewing the entire record and considering Gastelum's arguments, Gastelum has failed to establish that reversible error occurred. *Clark*, 196 Ariz. at 541, ¶ 50. Thus, we affirm Gastelum's convictions and sentences for molestation of a child and sexual conduct with a minor. Defense counsel has no further obligations unless counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Gastelum may file either a pro se motion for reconsideration or a petition for review within 30 days from the date of this decision. If he files a timely motion for reconsideration, he has 15 days after that motion is decided to file a petition for review. *See* Ariz. R. Crim. P. 31.21.

